**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　　　*Plaintiff-Appellee,*

v.

ARNELL DION DAVIS, a/k/a Flip,
　　　　　　　*Defendant-Appellant.*

No. 04-4014

Appeal from the United States District Court
for the Eastern District of Virginia, at Newport News.
Jerome B. Friedman, District Judge.
(CR-03-58)

Argued: June 4, 2004

Decided: August 17, 2004

Before WILKINSON, LUTTIG, and MICHAEL, Circuit Judges.

Affirmed by published opinion. Judge Luttig wrote the opinion, in which Judge Wilkinson joined. Judge Michael wrote an opinion concurring in part and dissenting from Part II.A.2.

**COUNSEL**

**ARGUED:** Timothy Vitow Anderson, Chesapeake, Virginia, for Appellant. Sherrie Scott Capotosto, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee. **ON BRIEF:** Paul J. McNulty, United States Attorney, Michael J. Elston, Assistant United States Attorney, Alexandria, Virginia, for Appellee.

**OPINION**

LUTTIG, Circuit Judge:

Appellant, Arnell Davis, was charged with suborning perjury, obstruction of justice, and related charges stemming from his attempts to persuade a witness to testify falsely in his favor at his earlier trial on federal drug and gun possession charges. Due to his deception, Davis was acquitted of all but a minor drug charge at his first trial. In the trial below, however, he was convicted of the instant charges, and sentenced to 62 months imprisonment. Davis appeals from that judgment, claiming, most significantly, that the district court erred by granting the government's motion for a six-level upward departure based on U.S. Sentencing Commission, *Guidelines Manual* ("USSG") § 5K2.9, p.s. ("Criminal Purpose") (2003).[1] For the following reasons, we now affirm.

I.

A.

When Davis was arrested for speeding in Suffolk, Virginia, in July 2001, police officers recovered a loaded 9mm pistol from the car's dashboard, and found almost two pounds of marijuana in a backpack behind the passenger seat. Davis, the car's lone occupant, was charged with possession with intent to distribute marijuana in violation of 21 U.S.C. § 841; carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c); and possession of a firearm by a drug user, in violation of 18 U.S.C. § 922(g)(3). He was tried on these counts before a federal jury but, except for a simple possession of marijuana conviction, was acquitted on all counts.

Subsequently, however, the government discovered evidence that Davis had convinced his ex-girlfriend, Sophia White, to testify falsely at trial that the marijuana actually was hers and, unbeknownst to

---

[1]All citations to "USSG" in this opinion refer to the 2003 guidelines manual.

Davis, she was holding it for someone else. In May 2003, a second grand jury returned a four-count indictment charging Davis with conspiracy to commit perjury and obstruction of justice, in violation of 18 U.S.C. § 371; witness tampering, in violation of 18 U.S.C. § 1512(b)(1); subornation of perjury, in violation of 18 U.S.C. § 1622; and obstruction of justice, in violation of 18 U.S.C. § 1503, and Davis was tried again on each of these different counts.

In that second trial, which led to the convictions and sentence from which Davis now appeals, the prosecution primarily relied on White's testimony, in which she explained how she had perjured herself during Davis' first trial by stating that the marijuana was hers. White's testimony was corroborated by a series of letters that Davis wrote to White when he was in prison awaiting his first trial. After hearing this evidence, the second jury convicted Davis on all counts. A presentence report was prepared that placed Davis (for reasons explained in more detail below) in Criminal History Category I with an adjusted offense level of 19, resulting in a sentencing range of 30-37 months. The parties agreed, however, that if Davis had been convicted at his first trial his sentence would have been 60-66 months, given that the section 924(c) charge, of which Davis was acquitted after White's perjured testimony, carried a mandatory minimum sentence of *60* months. *See United States* v. *Davis*, 293 F. Supp. 2d 652, 655 (E.D. Va. 2003). The government moved for an upward departure to address the disparity between the ranges.

The district court granted the government's motion, reasoning that an upward departure was justified because the guideline range did not adequately reflect the gravity of Davis' criminal conduct "due to the unique circumstances of this case." *Davis*, 293 F. Supp. 2d at 656. The court upwardly departed six levels to level 25 and sentenced Davis, within the new sentencing range, to 62 months in prison.

II.

On appeal, Davis argues, first, that the evidence presented at his second trial was insufficient to support at least two of his convictions and, second, that the district court erred in granting the government's motion for an upward departure. Because, however, the latter claim is by far the more substantial one, we address that claim first.

A.

Pursuant to 18 U.S.C. § 3742, as recently amended by the PROTECT Act,[2] we no longer apply a unitary abuse-of-discretion standard when reviewing departure decisions, but instead review "certain departure decisions," including "the ultimate decision to depart," "*de novo*." *See United States* v. *Stockton*, 349 F.3d 755, 764 & n.4 (4th Cir. 2003) (also concluding that this change to the standard of review did not raise Ex Post Facto Clause concerns), *cert. denied*, 124 S. Ct. 1695 (2004); *see also United States* v. *Riggs*, ___ F.3d ___, 2004 WL 1208927, *2 & n.1 (4th Cir. June 3, 2004). Nevertheless, these amendments do not disturb our preexisting standards of review for factual determinations made during sentencing, nor for the *degree* of the departure.[3] *See also United States* v. *Thurston*, 358 F.3d 51, 70-71 (1st Cir. 2004) (While appellate review of whether a departure decision was justified under the guidelines is now *de novo*, "the extent of the departure granted by the district court is reviewed deferentially, just as it was prior to the PROTECT Act."). Consequently, we review the district court's factual findings regarding its departure for clear error, *see Stockton*, 349 F.3d at 764 (citing *United States* v. *Rybicki*, 96 F.3d 754, 757-58 (4th Cir. 1996)), and the reasonableness of the extent to which the district court upwardly departed for abuse of discretion, *see United States* v. *Gary*, 18 F.3d 1123, 1127 (4th Cir. 1994).

---

[2]Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003, Pub. L. No. 108-21, § 401(d), 117 Stat. 650, 670 (2003) (amending 18 U.S.C. § 3742(e), (e)(3)).

[3]*See* 18 U.S.C.A. § 3742(e), (e)(B)(i)-(iii) (West Supp. 2004) (providing that the court of appeals shall determine, *de novo*, whether a departure was "based on a factor that": "does not advance the objectives set forth in section 3553(a)(2)"; "is not authorized under [18 U.S.C. §] 3553(b)"; or "is not justified by the facts of the case); § 3742(e), (e)(C) (providing that the court of appeals "shall accept the findings of fact of the district court unless they are clearly erroneous" and, in determining whether "the sentence departs to an unreasonable degree from the applicable guidelines range," "shall give due deference to the district court's application of the guidelines to the facts" in view of the factors set forth in section 3553(a) and the district court's statement of "the reasons for [its] imposition of the particular sentence").

The offense guidelines applied by the presentence report to Davis' four counts of conviction were USSG §§ 2J1.2 and 2J1.3 ("Obstruction of Justice" and "Perjury or Subornation of Perjury," respectively). Taken together, these sections direct the sentencing court to apply USSG § 2X3.1 ("Accessory After the Fact") to an underlying criminal offense "[i]f the offense involved obstructing the investigation or prosecution of [the underlying] criminal offense" or "if the offense involved perjury, subornation of perjury, or witness bribery in respect to [the underlying] criminal offense," so long as "the resulting offense level [from either cross reference] is greater than that determined [by applying sections 2J1.1 or 2J1.2]." *See* USSG §§ 2J1.2(c)(1), 2J1.3(c)(1). Section 2X3.1, in turn, calculates its base offense level from the "offense level" specified in the guidelines for the underlying criminal offense that the defendant's offenses of conviction for subornation and obstruction of justice attempted to conceal. That is, except at the extremes or in other circumstances not relevant here, the base offense level for section 2X3.1 is computed by subtracting six levels from the offense level for the underlying offense. *See* USSG § 2X3.1. This method presented no problem for Davis' drug trafficking offense (which has an offense level of eight, based on the amount of marijuana found). But Davis' gun charge was based on 18 U.S.C. § 924(c), which has an offense guideline (section 2K2.4) but has not been assigned an "offense level."[4]

Thus, section 2X3.1, which would normally produce a heightened sentence for an offender in similar circumstances, could not be applied to Davis' section 924(c) offense. Using only the offense level for the marijuana charge, the resulting offense level under 2X3.1 would be significantly lower than that obtained by straight application of sections 2J1.2 and 2J1.3, so the defendant's sentence was calculated with respect to those sections only — producing the 30-37

---

[4]We doubt that this omission was accidental. More likely, the Commission just thought that including an offense level for section 924(c) was unnecessary, given that under section 2K2.4(b) section 924(c)'s mandatory minimum sentence is *the* "sentencing range" for that offense. While the offense level is generally crucial in calculating the sentence for a given offense, that level is much less relevant for those offenses for which the sentencing range is created by statute, and to which the typical reductions or adjustments allowed by the guidelines do not apply.

month guideline range. *See Davis*, 293 F. Supp. 2d at 655. Notably, however, the presentence report mentioned section 5K2.9 as a factor that, if proven, could warrant an upward departure.

Davis makes several arguments in support of his ultimate claim that the upward departure was error. His contentions, grouped broadly, require us to resolve at least two questions: first, whether the district court's identified basis for departure was a permissible one under the facts of the case, and second, whether the extent of the departure made by the district court was reasonable. *See United States* v. *Lawrence*, 349 F.3d 724, 726 (4th Cir. 2003). Under the standard of review set forth above, we review the first question *de novo*, and the second for abuse of discretion.

1.

By statute, an upward departure is only justified if "the court finds that there exists an aggravating . . . circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a [higher] sentence." 18 U.S.C. § 3553(b) (2000); *see also* USSG § 5K2.0, p.s. (implementing and elaborating on section 3553(b)). In *Koon* v. *United States*, 518 U.S. 81 (1996), the Supreme Court interpreted the relevant departure provisions and delineated three categories of departures based on permissible factors (*i.e.*, those that are not explicitly forbidden):

> (1) departures based on an encouraged factor [not taken into account by the applicable guideline]; (2) departures based on a discouraged factor, or an encouraged factor already taken into account in the applicable guideline range; and (3) departures based on factors not mentioned in the Sentencing Guidelines.

*Davis*, 293 F. Supp. 2d at 654; *see also Koon*, 518 U.S. at 96. The district court concluded that an upward departure was proper under all three categories — under the "Criminal Purpose" ground of departure, section 5K2.9, for the first two, and under section 5K2.0's provisions regarding departures based on unmentioned factors, for the third. Because we conclude that section 5K2.9 is a permissible basis for the

instant departure, we do not consider whether any unmentioned factors also would be sufficient.

Section 5K2.9 authorizes an upward departure "[i]f the defendant committed the offense in order to facilitate or conceal the commission of another offense [here, the unaccounted-for underlying gun possession offense]." USSG § 5K2.9, p.s. Where that factor is present, "the court may increase the sentence above the guideline range to reflect the actual seriousness of the defendant's conduct." *Id*. Thus, section 5K2.9 clearly is an "encouraged" basis for departure. *See United States* v. *Barber*, 119 F.3d 276, 280 (4th Cir. 1997) (*en banc*) (factors that "the Commission has indicated . . . may provide an appropriate basis for departure" are "considered to be 'encouraged factors'").

The next question is whether that encouraged factor is accounted for in the "applicable guideline" here — section 2X3.1, as applied on a cross-reference from sections 2J1.2 or 2J1.3. We believe that it is. Section 2X3.1 will be cross-referenced from sections 2J1.2 or 2J1.3 whenever offenses of conviction covered by those guidelines were committed "to facilitate or conceal" an underlying criminal offense. *See* §§ 2J1.2(c)(1), 2J1.3(c)(1). Then, as noted above, the base offense level for section 2X3.1 as cross-referenced will be based on the offense level for that same underlying offense. And finally, as with departures under section 5K2.9, which are authorized "to reflect the actual seriousness of the defendant's conduct," the purpose of cross-referencing section 2X3.1 in cases like this one is to "provide *an enhanced offense level* when the obstruction is in respect to *a particularly serious offense*." USSG § 2J1.2, cmt. background (emphases added). Thus, that cross-reference to section 2X3.1 generally accounts for the encouraged factor of section 5K2.9. *See Barber*, 119 F.3d at 280-81 & n.3 (explaining that one way that an applicable guideline may be considered to "take[ ] [a] factor into account . . . [is] by adjustment to the base offense level through a specific offense characteristic" similar to that relied on by the encouraged factor). Category one of *Koon* is inapplicable here.

An upward departure in this case is, however, justified under category two of *Koon*. As noted above, even though section 2X3.1 *generally* accounts for the encouraged factor of section 5K2.9, a departure under the section 5K2.9 may still be warranted if "that factor is pres-

ent to such an exceptional or extraordinary degree that it is outside the heartland of situations encompassed within the applicable guideline." *Barber*, 119 F.3d at 280. And if the "set of typical cases embodying the conduct that [section 2X3.1 as cross-referenced here] describes" — its "heartland" — encompasses anything, it encompasses those cases in which the underlying offense for 2X3.1 purposes *has* an offense level. *See Koon*, 518 U.S. at 93. Section 924(c) has no offense level, however, nor do the guidelines provide a clear method for calculating its offense level.[5] In contrast, because the vast majority of federal crimes are provided an offense level (or a method of calculating one) by the guidelines, section 2X3.1's application will not be hindered in the slightest when those crimes are the underlying offense for that section.

Under category two of *Koon*, the district court's task (and ours on *de novo* review) was to "determine *not as a general matter* whether a suggested basis for departure is within the heartland, but whether it is within the heartland *given the specific facts of the particular case*." *United States* v. *Hairston*, 96 F.3d 102, 106 (4th Cir. 1996) (emphases added). Because commission of Davis' offenses of commission to conceal a section 924(c) offense — the specific facts of *this* case — satisfies the encouraged factor of section 5K2.9, but is not accounted for, *at all*, by the applicable guideline, section 2X3.1, this case's facts are outside of that guideline's heartland.[6]

(Text continued on page 10)

---

[5]*See United States* v. *Graham*, 210 F.3d 376, 2000 WL 52891, *1 (7th Cir. 2000) (unpublished) (concluding that it "clearly would be frivolous" to argue that the sentence for a section 924(c) conviction should have been reduced for acceptance of responsibility: "The acceptance of responsibility credit operates by reducing the offense level calculation by one to three points. But in sentencing for a § 924(c) conviction, there is no offense level calculation. In fact, there is no offense level.") (citing *United States* v. *Scaffer*, 110 F.3d 530, 533 (8th Cir. 1997).

[6]Appellant attempts to counter this conclusion by contending that 924(c) charges are relatively common, and, thus, the Sentencing Commission, "elaborate" as its guidelines are, must have knowingly prevented 924(c) from being considered as an underlying crime in obstruction of justice cases by omitting to provide for an offense level for that crime. Under this thinking, Davis' situation was indeed taken into account by the sentencing guidelines, but was implicitly rejected as a permissible basis of departure. *See* Br. of Appellant at 9.

This reasoning is entirely unpersuasive. Assuming that Davis has even framed the proper inquiry under his own rationale — a better question would be the number of cases in which uncharged section 924(c) conduct is concealed by offenses like subornation of perjury or obstruction of justice for which a defendant is convicted, and Davis has not cited any cases dealing with *that* issue — whether a factor is a proper basis for departure under *Koon* "does not turn on whether the Commission" must have "'thought about' the factor before formulating the guidelines." *Barber*, 119 F.3d at 288 (separate op. of Wilkins, J.). Thus, "it is irrelevant whether [the requirement of an offense level in 2X3.1] may have been a motivating or even determining factor in leading the Commission to structure the guidelines in a particular way" by, for example, not assigning an offense level to section 924(c). *Id*. "Instead, the relevant inquiry is," as always, "whether the . . . factor is within the heartland of conduct encompassed by the applicable guideline," *id*., and as shown above, witness tampering and the like to "conceal" a section 924(c) offense (the section 5K2.9 factor in this case) are outside of the heartland of section 2X3.1. *See also id*. ("The quintessence of the Commission's direction on departures and the ultimate point of the *Koon* decision is that analysis of whether a factor was 'considered' by the Commission in formulating the guidelines involves an inquiry into the heartland of conduct encompassed by the applicable guideline —not speculation into the subjective thought processes that may have led to the development of various guidelines.").

In any event, it is indisputable that a primary reason that departures are allowed at all is to account for omissions that Congress knew the Sentencing Commission would inevitably make. *See Koon*, 518 U.S. at 93-94 (observing that one of the two reasons for the Commission's approach to departures is that "it is difficult to prescribe a single set of guidelines that encompasses the vast range of human conduct potentially relevant to a sentencing decision"). Davis simply has not demonstrated any foundation for his proffered reconstruction of well-established principles of guideline departures. And in the end, the *in*adequacy of the guidelines regarding the particular instance of the encouraged factor of section 5K2.9 present here is soundly established when, because of a quirk in the guidelines and absent an upward departure, Davis would have benefitted at sentencing from his misconduct simply because a cross-reference cannot be applied to the "particularly serious" section 924(c) offense in this case, *see* USSG § 2J1.2, cmt. background — especially when Davis has failed to offer more than his counterintuitive speculation that such a sentencing benefit was, in fact, the Commission's *intent*.

Accordingly, even if, as Davis suggests, section 2J1.2 and 2J1.3 offenses like his are almost always done "to facilitate or conceal" another criminal offense, that would not make an upward departure under section 5K2.9 improper if, as here: (1) sections 2J1.2 and 2J1.3 themselves provide for a cross-reference to section 2X3.1 to account for the extra culpability that comes from obstructing justice to conceal a "particularly serious offense," and (2) section 2X3.1 does not account for obstruction of justice done "to facilitate or conceal" *Davis' section 924(c) offense*. At least as to that second category, then, the district court's conclusion was not in error.[7] Because this case is significantly "different from the ordinary case where [underlying criminal conduct by the defendant is concealed by the defendant's subornation and obstruction of justice crimes]," *Koon*, 518 U.S. at 96, we hold that the district court did not err in departing upward under section 5K2.9.

2.

Having determined that a departure was "appropriate in [this] particular case, the extent thereof need only be 'reasonable under the circumstances.'" *United States* v. *Bellamy*, 264 F.3d 448, 454 n.3 (4th Cir. 2001) (citations omitted); 18 U.S.C. § 3742(f)(2). As explained by the Supreme Court, "the reasonableness determination looks to the amount and extent of the departure *in light of the grounds for departing*." *Williams* v. *United States*, 503 U.S. 193, 203 (1992) (emphasis

---

[7]We also reject Davis' claim that there is no evidence that White or anyone else made false statements *with regard to the gun* (rather than the drugs) and, consequently, there was insufficient evidence to support the application of section 5K2.9 based on his concealment of a section 924(c) offense. The existence of a drug trafficking crime during and in relation to which Davis carried the gun (or possessed it in furtherance of his drug trafficking crime) is a prerequisite for violating 924(c), *see* 18 U.S.C. § 924(c)(1) (2000); *United States* v. *Studifin*, 240 F.3d 415, 419 (4th Cir. 2001). And since Davis' letters can be fairly read as an attempt not only to avoid conviction for the drug possession charge, but for the gun offense based in part on that drug possession as well, the district court did not clearly err in concluding that Davis' offenses of conviction were committed to conceal his section 924(c) offense.

added). Under *Williams*, this is necessarily a wide-ranging and flexible inquiry:

> In assessing reasonableness . . . the Act directs a court of appeals to examine the [statutory] factors to be considered in imposing a sentence under the Guidelines, as well as the district court's stated reasons for the imposition of the particular sentence. A sentence thus can be "reasonable" even if some of the reasons given by the district court to justify the departure from the presumptive guideline range are invalid, provided that the remaining reasons are sufficient to justify the magnitude of the departure.

*Id*. at 203-04 (citing then-current version of section 3742(e)); *see also* 18 U.S.C.A. § 3742(e), (e)(C) (West Supp. 2004) (providing that appellate review of whether a sentence "departs to an unreasonable degree" must consider the statutory "factors to be considered in imposing a sentence" as well as the district court's statement of its "reasons for the imposition of the particular sentence").

The district court departed "pursuant to § 5k2.9," *Davis*, 293 F. Supp. 2d at 655, which provides that "the court may increase the sentence above the guideline range to reflect the actual seriousness of the defendant's conduct." Under this framework, the district court, analogizing to section 2J1.2, reasoned that "[a]lthough this section does not permit consideration of the underlying gun charge, *its instruction to consider the underlying criminal offense guides the extent of the court's departure*." *Davis*, 293 F. Supp. 2d at 655-56. After discussing the standards governing its reasonableness inquiry, the court concluded that the extent of its departure was not unreasonable; a sentencing range overlapping that which Davis would have received for the underlying offenses upon conviction was "necessary to ensure," in the court's view, "that Davis d[id] not receive a net sentencing benefit for his efforts to conceal his earlier offenses." *Id*. Thus, in this § 5k2.9 departure, the court concluded that the six-level increase and the sentence imposed "account[ed] for the *seriousness of the crimes* for which [Davis] avoided punishment by his obstruction of justice and subornation of perjury" — the "conduct" on which the upward departure is justified — and was "reasonable under the circumstances." *Id*. (emphasis added).

As the *en banc* Ninth Circuit has concluded, "where . . . a district court sets out findings justifying the magnitude of its decision to depart and extent of departure from the Guidelines, and that explanation cannot be said to be unreasonable, the sentence imposed must be affirmed." *United States* v. *Sablan*, 114 F.3d 913, 919 (9th Cir. 1997) (*en banc*) (overruling, in light of *Koon*, prior precedents that dictated a "mechanistic" approach to upward departures). Because these requirements were satisfied here, we cannot say that the district court abused its discretion in sentencing Davis.

First, the district court did not select the extent of its departure *ad hoc*, but rather provided a sufficiently principled explanation for its decision to depart upward six levels in this case. *See United States* v. *Terry*, 142 F.3d 702, 707 (4th Cir. 1998) (explaining that "it is often helpful" for district courts to determine reasonableness by reference to analogous guidelines or cases and instructing that the sentencing "court must set forth *some form of principled justification* for its departure determination.") (emphasis added)**.** Indeed, the court only departed after analyzing the inadequacy of the applicable guideline (section 2X3.1) in the instant case, the seriousness of the specific conduct that this inadequacy prevented from being addressed, and the increase in offense level, as well as the sentence imposed, that was "necessary" to account for that conduct.[8]

Similarly, the district court's justification addressed all necessary factors. When a departure is based on an encouraged ground for departure set forth in a specific guideline, the district court, in determining how much to depart in a particular case, must consider the

---

[8]*Cf.*, *e.g.*, *Terry*, 142 F.3d at 707 n.6 (holding that when a district court departed upward one level for each of 8 miles of "a scenic roadway not constructed for high speed driving" on which the defendant drove at dangerous speeds, that "methodology" was not "a principled justification for departing [upward] by eight levels"); *United States* v. *Gary*, 18 F.3d 1123, 1130-31 (4th Cir. 1994) (district court failed to "employ principled methods" in deciding to depart upward 12-levels for extreme conduct and extreme psychological injury — a departure that the court concluded was permissible in that case — when "[i]t appear[ed] that the district court simply decided to double Gary's base offense level for the sake of doubling it").

guidance that guideline provides as to the appropriate extent of departure. *See Terry*, 142 F.3d at 709. While the *applicability* of section 5K2.9 is predicated on a determination that "the defendant committed the offense in order to facilitate or conceal the commission of another offense," the only guidance section 5K2.9 provides for determining the *extent* of a departure under that section is that the upward departure may be made "to reflect the actual seriousness of the defendant's conduct." Without question, the district court's opinion squarely addressed and relied on the latter consideration in justifying the extent of its departure.

And we are satisfied that the district court's six-level upward departure was a reasonable way to address the "seriousness" of Davis' conduct that, because section 924(c) has no offense level, could not be accounted for under section 2X3.1. Importantly, the departure complies with our instruction that "an upward departure should 'not *exceed* the sentence that would result under the Guidelines if [the defendant] actually had been convicted of [the conduct underlying the departure].'"[9] *Terry*, 142 F.3d at 709 (quoting *United States* v. *Melton*, 970 F.2d 1328, 1334 (4th Cir. 1992) (alterations in the original) (emphasis added)). The departure is also not exceptionally large rela-

---

[9]On this point, Davis presses the facially meritorious contention that since we cannot be *certain* that he would have been convicted at his *first* trial had he not committed the offenses for which was convicted at his *second* trial, a departure based on the penalty he would have received if actually convicted of those offenses is unreasonable. But, again, Davis misconstrues the relevant inquiry. That is, the threshold applicability of section 5K2.9 in this case requires no more than a conclusion that the government proved by a preponderance of the evidence that a defendant's suborning and obstruction of justice were done "to facilitate or conceal the commission of another offense." USSG § 5K2.9, p.s.; *see United States* v. *Hill*, 322 F.3d 301, 307 (4th Cir. 2003). If that requirement is met, then section 5K2.9 indicates the possibility of a departure to account for the seriousness of Davis' "conduct" — whether or not the defendant would have been convicted under the more restrictive evidentiary standards, and higher burden of proof, that would have applied at a criminal trial for the underlying criminal offense that he attempted to conceal through his actual offense of conviction. *See United States* v. *LeMaster*, 54 F.3d 1224, 1232 (6th Cir. 1995).

tive to upward departures generally,[10] and while there are relatively few cases addressing section 5K2.9 departures, we note that the Ninth Circuit has upheld a far larger departure under that section in analogous circumstances.[11]

To be sure, the district court might have determined the extent of the upward departure differently. The court might have, as the dissent suggests, tried to approximate the result that application of section 2X3.1 would produce if it could be applied to section 924(c) offenses. But even assuming that such a methodology would be proper under the guidelines, the district court was not *required* to employ it. Neither this nor any other method has been specified by the Commission as the proper means to determine the seriousness of criminal conduct that conceals a section 924(c) offense under section 5K2.9, and nothing in the guidelines compels the conclusion that the district court's chosen method was a prohibited one.[12]

Nor, as the dissent maintains, does *Terry* dictate a different conclusion. In *Terry*, we did not hold, as the dissent contends we did, that the district court is limited to determining the recommended sentence for analogous conduct and imposing that sentence. We said nothing more in *Terry* than that "it is often helpful to look to the treatment of analogous conduct in other sections of the Sentencing Guidelines" when deciding upon a departure. *Terry*, 142 F.3d at 707. Here, the district court did just that, looking to the treatment of the analogous

---

[10]*See*, *e.g.*, *Gary*, 18 F.3d at 1130-31 (collecting cases upholding upward departures of between 10 and 21 levels); *Sablan*, 114 F.3d at 915, 918-19 (holding that a 15-level departure to the then-statutory maximum based on several factors was reasonable).

[11]*See United States* v. *Washington*, 172 F.3d 1116, 1117-18 (9th Cir. 1999) (holding that a 13-level departure under sections 5K2.0 and 5K2.9 was not unreasonable).

[12]As we observed six years ago in *Terry* — and as appears to remain the case today — the Commission simply "has not provided the district courts with any specific guidance for determining the *extent* of a departure" that, like section 5K2.9, is governed by the general "Grounds for Departure" policy statement, section 5K2.0. 142 F.3d at 707 (emphasis added); *see also* USSG § 5K2.0 (generally); § 5K2.0, cmt. n.2 ("Scope of this Policy Statement").

conduct of obstruction of prosecution in § 2J1.2. *Davis*, 293 F. Supp. 2d at 656. The dissent insists that the district court was required to have imposed the exact sentence, or one approximating the sentence, recommended in § 2x3.1 (the guideline cross-referenced in § 2J1.2), or at least to have explained any decision not to impose such sentence. *See post* at 17-19. But *Terry* requires nothing of the sort, and neither do we believe that such is required under 18 U.S.C. § 3742(f)(2). We are especially confident of this conclusion where, as here, the district court departs pursuant to a guideline that itself instructs on the appropriate extent of any departure. Here, of course, the district court determined by reference to § 2J1.2 that the "underlying criminal offense" was relevant to any enhancement and then reasonably applied § 5K2.9, imposing a sentence that "account[ed] for the seriousness of the crimes for which the defendant avoided punishment," *i.e.*, the underlying criminal offense. *Davis*, 293 F. Supp. 2d at 656.

Nor is the district court's method without its own merits. Section 924(c) is a statutory sentence enhancement applied "in addition to the punishment provided for [the underlying crime]," § 924(c), and for which, under these circumstances, "the guideline sentence *is* the minimum term of imprisonment required by statute," without any potential for downward adjustments for acceptance of responsibility or the like. *See* USSG § 2K2.4(b) (emphasis added); *supra* at 5 n.4. Arguably, this sentence represents the special culpability with which Congress views that offense; an alternative methodology that attempted to create some hypothetical offense level for section 924(c) offenses that could be used in the section 2X3.1 calculations could very well discount the contribution made by the special characteristics of Davis' section 924(c) offense to the "seriousness" of his "conduct" as meant by section 5K2.9 and, if mandated by a court of appeals, could make short shrift of the deference we owe — by statute, no less — to the district courts' expertise on this question. *See supra* at 4 n.2 (citing § 3742(e), (e)(4)); *United States* v. *LeMaster*, 54 F.3d 1224, 1233 (6th Cir. 1995) ("[I]t is for the sentencing court to determine the extent of the departure based upon the totality of the circumstances. *The trial judge's determination should be given great deference unless we can say that there is no basis for the departure*.") (emphasis added).

Accordingly, we hold that the district court was well within its discretion in concluding that Davis' sentence departed from the applica-

ble guideline range by a degree that was reasonable under the circumstances, and therefore affirm Davis' sentence.

## B.

As a final matter, we briefly address Davis' two specific challenges to the sufficiency of the evidence supporting his convictions. First, we reject Davis' claim that the "two-witness" rule required the testimony of two witnesses to convict him for subornation of perjury, and only one witness (White) actually testified at his trial. Even if this rule applies to subornation of perjury in addition to perjury itself, the rule does not require as much as Davis suggests. Indeed, although Davis cites to *United States* v. *Knohl*, 379 F.2d 427 (2d Cir. 1967) in support of his argument, that case rejects his categorical version of the two-witness rule *on its face*, explaining that "the falsity of swearing or the formal affirmation . . . must be established by the testimony of two credible witnesses *or one such witness plus corroborating circumstances*." *Id*. at 443 (emphasis added). And from our review of the record, the production of Davis' letters was more than adequate corroboration of White's testimony.[13]

---

[13]For instance, in one letter Davis wrote the following:

> See what they are trying to do is stick me in the pen fed time. Not just little jail. I don't know why. *I know that I need you to do what we talked about or I'm done, really done, 10 to 12 years*. Damn, that's what I've been told anyway. Look, the only way out is to make it look good. *You have to stand up and act like you know exactly what the deal is*. No stuttering. I can be helped, but only by you, okay. Please. *I'm a write and let you know what to say, but I have to wait until Monday to talk to my lawyer*. We got to keep the story short and simple. You should say something like you need rent money bad, down to your last dollar, and your ex-boyfriend, say no name, said if you hold this for me [the ex-boyfriend], he'll pay you — he'll pay all your rent for you. *Say all you was to do was to hold it*.

J.A. 107-08 (Letter read by Sophia White at trial) (emphases added). Additional letters like the one above were also introduced into evidence, as was independent corroboration of Davis' location at the relevant time, which corresponded with the letters' indicated return address.

Second, we reject Davis' challenge to his conviction for witness tampering pursuant to 18 U.S.C. § 1512. Contrary to Davis' assertions, the current, and relevant, version of this statute does not require proof that a defendant knowingly engaged in coercive or deceptive conduct in order to obtain a conviction for witness tampering. Rather, section 1512 provides that "[w]hoever knowingly uses intimidation, threatens or *corruptly persuades* another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to" influence a witness at trial is guilty. § 1512(b)(1) (emphasis added). As we read the statute, "the 'corruptly persuades' language of the [current] statute *encompasses non-coercive attempts by a target of a criminal investigation to tamper with prospective witnesses.*" *United States* v. *Khatami*, 280 F.3d 907, 908 (9th Cir. 2002) (emphasis added). The evidence is easily sufficient to show that Davis "corruptly persuaded" White to perjure herself, even if he did not coerce or deceive her to do so. Accordingly, we hold that the evidence at Davis' trial was sufficient to support his conviction on all counts, and thus that the district court's denials of Davis' motions for a new trial and for a judgment of acquittal were not erroneous.

## CONCLUSION

For these reasons, the judgment of the district court is affirmed.

*AFFIRMED*

MICHAEL, Circuit Judge, concurring in part and dissenting in part:

The district court did not adequately justify its upward departure when it sentenced Arnell Davis for obstructing his earlier prosecution for gun possession under 18 U.S.C. § 924(c). The court decided to depart upwardly because the sentencing guidelines do "not account for obstruction of justice done to 'facilitate or conceal' [a] section 924(c) offense." *Ante* at 10. In considering departure, the court recognized that "the analogous treatment in the Guidelines is found under section 2J1.2 [obstruction of justice]." J.A. 295. Then, in accordance with § 2J1.2's "instruction to consider the underlying [concealed] criminal offense," *id.*, the court gave Davis a sentence corresponding to what he would have received if he had been convicted of violating § 924(c) at his initial trial. In doing this, the court never discussed

guideline § 2J1.2(c), which plainly suggests that obstruction does not warrant a sentence equal to one that could be imposed for the underlying concealed crime. Because the district court abused its discretion when it structured the departure in a manner that directly contradicts the guidelines' treatment of analogous conduct, I respectfully dissent from part II.A.2 of the majority opinion. I otherwise concur.

Under the Sentencing Reform Act the extent of any departure from the guidelines must be "reasonable under the circumstances." *United States v. Terry*, 142 F.3d 702, 707 (4th Cir. 1998) (citing 18 U.S.C. § 3742(f)(2)). When a court exercises its departure powers, the "standard of reasonableness . . . demand[s] . . . continued cognizance of the guidelines." *United States v. Hummer*, 916 F.2d 186, 195 n.7 (4th Cir. 1990). In *United States v. Terry* we explained that:

> In determining what is reasonable . . . the sentencing court should first consider the rationale and methodology of the Sentencing Guidelines. In particular, it is often helpful to look to the treatment of analogous conduct in other sections of the Sentencing Guidelines. In the event the Sentencing Guidelines do not provide any useful analogies, however, the sentencing court must set forth some form of principled justification for its departure determination.

142 F.3d at 707 (internal citations omitted). *Terry* makes it clear that when deciding the extent of a departure, the sentencing court should look first and foremost at the rationale and methodology of the guidelines, which is most readily identified by referring to analogous conduct. *If* the guidelines do not provide any useful analogies, however, the sentencing court must set forth some other principled justification for its departure.

Section 2J1.2, the guideline for obstruction of justice, provides a clear analogy for how a defendant like Davis should be sentenced. Specifically, the section says that when a defendant obstructs the prosecution of a criminal offense, he is to be sentenced as an accessory after the fact to the underlying offense. U.S.S.G. § 2J1.2(c). Under § 2X3.1 an accessory after the fact is assigned a base offense level that is "6 levels lower than the offense level of the underlying offense." This six level reduction reflects an accessory's "reduced cul-

pability" in comparison to a person who is convicted of the underlying offense. *Id*. § 2X3.1, cmt. n.2. Thus, § 2J1.2's rationale and methodology confirm two points that are relevant to Davis's case: (1) when a defendant obstructs the prosecution of an underlying crime, the punishment level for the underlying crime is the starting point in calculating the sentence; and (2) although the underlying crime is to be considered when determining the sentence for obstruction, a defendant should normally receive a lesser sentence than he would have received if convicted of the underlying crime.

In this case the district court decided to depart because § 2J1.2, with its cross-reference to § 2X3.1, "do[es] not allow for the consideration of a stand alone 18 U.S.C. 924(c) gun possession charge because it does not carry an offense level." J.A. 293. In deciding the extent of the departure, the court began by recognizing that "the analogous treatment in the Guidelines is found under section 2J1.2." J.A. 295. The court concluded that "[a]lthough this section does not permit consideration of the underlying gun charge, its instruction to consider the underlying criminal offense guides the extent of the court's departure." *Id.* The court then departed upward to an offense level yielding the same sentencing range that would have been applicable if Davis had been convicted of violating 18 U.S.C. § 924(c) at his initial trial. The court said that this level was "necessary to ensure . . . that Davis d[id] not receive a net sentencing benefit for his efforts to conceal his earlier offenses." *Id.* In reaching this conclusion, the court never discussed § 2J1.2's instruction that a person who obstructs the prosecution of a crime is to be sentenced as if he was *less culpable* than a person who is convicted of the underlying crime. Nor did the court mention that under § 2J1.2 there is a net sentencing benefit for the defendant who is convicted of obstruction rather than for his underlying crime.

The district court abused its discretion when it failed to explain why it structured Davis's sentence in a manner that directly contradicted the guidelines' treatment of analogous conduct under § 2J1.2. *See Terry*, 142 F.3d at 707. Specifically, Davis was given a sentence corresponding to a § 924(c) conviction when § 2J1.2, with its cross-reference to § 2X3.1, plainly says that a defendant's obstruction of a prosecution does not warrant a sentence equal to the underlying crime. It is true that § 2J1.2 cannot be precisely applied to a case

involving a § 924(c) offense. That does not mean, however, that the principles embodied in that analogous section (§ 2J1.2) have no application to such a case. As the Seventh Circuit has said, "[a] judge may not say: 'I have decided to depart, so I now throw away the guidelines.'" *United States v. Ferra*, 900 F.2d 1057, 1061-62 (7th Cir. 1990), *quoted in Terry*, 142 F.3d at 707. But that is exactly what occurred here: the district court determined that a departure was necessary because § 2X3.1 could not be applied to an offense that has no base offense level; the court thereafter "threw away" the portion of the guidelines indicating that Davis was less culpable than if he had been convicted of violating § 924(c).

As the majority recognizes, the district court could have accommodated the guidelines' treatment of analogous conduct in § 2J1.2 by "approximat[ing] the result that application of section 2X3.1 would produce if it could be applied to section 924(c) offenses." *Ante* at 14. I agree that the district court was not required to structure its sentence in such a manner. However, the court had a duty to explain why it chose not to accommodate a guideline that, in the district court's own words, provided "analogous treatment" to Davis's case. More precisely, the district court should have explained what it was about Davis's conduct (obstructing the prosecution of a § 924(c) offense) that necessitated treating it differently than conduct generally covered in § 2J1.2 (obstructing the prosecution of an offense that has a base offense level). For example, the majority explains that Congress's decision to impose a mandatory minimum sentence for violating § 924(c) may reflect "the special culpability with which Congress views that [conduct]." *Ante* at 15. Accordingly, the majority argues, the district court's decision to impose a five-year sentence might take into account "the special characteristics of Davis' section 924(c) offense." *Id.* While that may be true, the district court's decision did not include the explanations offered by the majority. The only reason the district court departed was because a § 924(c) offense is punishable by a mandatory minimum rather than a base offense level. The court never suggested that there was something more serious in Davis's conduct than in conduct obstructing the prosecution of some other offense. Because the district court did not find Davis's conduct to be any more egregious than other conduct falling under § 2J1.2, that guideline section, it appears, should have been relied upon to set the parameters of the court's departure.

The majority upholds the departure determination because, in its view, our circuit only requires that a district court "set forth some form of principled justification for its departure determination." *Ante* at 12 (citing *Terry*, 142 F.3d at 707). In this case the majority believes the district court offered a "principled justification" when it said that the departure was "necessary to ensure . . . that Davis did not receive a net sentencing benefit for his efforts to conceal his earlier offenses." *Ante* at 11 (citing J.A. 295), 12. This "justification," however, directly contradicts the rationale of § 2J1.2, which provides that a defendant's obstruction does not justify a sentence equal to the underlying crime. I therefore respectfully disagree with the majority's ultimate position that the district court was not under any duty to consider § 2J1.2, as long as it offered any principled justification in support of its departure.

First, our court has not held that a district court may, in all cases, ignore the guidelines' treatment of analogous conduct as long as it offers "some form of principled justification" for its departure decision. *Ante* at 12. In fact, our case law suggests just the opposite. In *Terry* we said that "it is often helpful to look to the treatment of analogous conduct in other sections of the Sentencing Guidelines. In the event the Sentencing Guidelines do not provide any useful analogies . . . the sentencing court must set forth some form of principled justification for its departure." 142 F.3d at 707 (emphasis added). The majority reads this language to mean "nothing more . . . than that" a court may look to analogous conduct in structuring a departure, or it may not. *Ante* at 14, 12. This interpretation does not account for the phrase "in the event," which is generally used to mean "if." *See* Webster's Third New Int'l Dictionary 1124 (1993) (defining "if" as "in the event that"). A more accurate reading of *Terry* is that *if* a district court decides that the guidelines do not provide any useful analogies, then it may look elsewhere for guidance in structuring its departure.[1] In our case the district court specifically found that § 2J1.2 provided analogous conduct. But rather than using the guidelines' "treatment of [this] analogous conduct," *Terry*, 142 F.3d at 707, to structure its departure, the district court offered its own justification, one that was

---

[1]Because we review the extent of a departure for abuse of discretion, we would owe deference to a district court's decision about whether a guideline provides a useful analogy.

completely at odds with the very section that the court had found to be analogous. *Terry* does not allow guidelines' methodology to be brushed aside so easily.[2]

Second, provisions of the Sentencing Reform Act and the guidelines support the conclusion that departures should, when possible, be guided by analogous conduct. For example, 18 U.S.C. § 3553(b)(1) says that when a court is imposing a sentence for an offense for which there is no applicable guideline, the court must "have due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses." Guideline § 2X5.1 says that if an offense is committed for which "no guideline expressly has been promulgated," U.S.S.G. § 2X5.1, the court "is required to determine if there is a sufficiently analogous offense guideline and if so to apply the guideline that is most analogous," *id.* at cmt. background. *See also* U.S.S.G. § 4A1.3 (when departing because criminal history category does not adequately reflect the seriousness of defendant's former crimes, the court should use "as a reference, the criminal history category applicable to defendants whose criminal history . . . most closely resembles that of defendant"). These provisions make clear that when there is no applicable guideline, the sentencing court must consider the guidelines' treatment of analogous conduct. This same requirement should apply when, as in this case, there is a guideline (§ 2J1.2), but the court decides to depart. *See Ferra*, 900 F.2d at 1062.

---

[2]The majority suggests that the district court did "look[ ] to the treatment of the analogous conduct" in structuring its departure. *Ante* at 14-15. Specifically, according to the majority, the district court "determined by reference to § 2J1.2 that the 'underlying criminal offense' was relevant to any enhancement." *Id.* at 15. But as I discuss above, § 2J1.2(c) does not just say that the underlying criminal offense is relevant; it also provides that obstruction of a prosecution does not warrant a sentence equal to one that could be imposed for the underlying offense. The majority does not believe that *Terry* required the district court to account for this latter proviso of § 2J1.2(c). I respectfully disagree. *Terry* recognized that "look[ing] to the treatment of analogous conduct" provides a principled method for structuring a departure. *Terry*, 142 F.3d at 707. The method is only principled, however, if the district court actually applies the treatment for analogous conduct or explains why that treatment is not appropriate. The district court failed to do either in this case.

Finally, a court must consider analogous conduct when structuring a departure in order to carry out Congress's intention that "the sentencing guidelines system . . . will guide the judge in making his decision on the appropriate sentence." S. Rep. No. 98-225 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3234. *See also Hummer*, 916 F.2d at 195 n.7 (when deciding how far to depart, district court must remain "cognizan[t] of the guidelines"). A district court that ignores directly analogous guidelines is no longer being guided by them. Rather, it is being guided by its own subjective beliefs about how certain conduct should be sentenced. That is the exact outcome the guidelines were designed to avoid.

In sum, the district court here did not provide a reasonable basis for its departure decision. Accordingly, I would remand for resentencing. At that time, if the district court imposed the same sentence, it would have to offer a reasonable justification for why it did not apply the principles of § 2J1.2 to Davis's case. *See, e.g.*, *United States v. Gary*, 18 F.3d 1123, 1125 (4th Cir. 1994) ("We do not imply that the district court must reduce the upward departure imposed on remand, but simply that a reasoned basis for the court's decision must be set forth.")