PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
             *Plaintiff-Appellee,*

v.

RAJUL RUHBAYAN, a/k/a James
Vernette Johnson, a/k/a James
Vernon Wood, a/k/a Jibrael
Ruhalamin, a/k/a Jibra'el Ruh-
alamin, a/k/a Amir Ruhbayan, a/k/a
Deja, a/k/a Day-Ja, a/k/a Kreem,
a/k/a Creme,

             *Defendant-Appellant.*

No. 05-5166

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Rebecca Beach Smith, District Judge.
(CR-02-29)

Argued: May 23, 2007

Decided: August 3, 2007

Before KING and DUNCAN, Circuit Judges, and
WILKINS, Senior Circuit Judge.

---

Affirmed by published opinion. Judge King wrote the opinion, in
which Judge Duncan and Senior Judge Wilkins joined.

---

## COUNSEL

**ARGUED:** Joseph Barry McCracken, Norfolk, Virginia, for Appel-
lant. James Ashford Metcalfe, Assistant United States Attorney,

OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee. **ON BRIEF:** Chuck Rosenberg, United States Attorney, Alexandria, Virginia; Jonathan Tate Mlinarcik, Third-Year Law Student, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee.

---

## OPINION

KING, Circuit Judge:

Rajul Ruhbayan takes this appeal from his 2005 sentence of life imprisonment and three concurrent sixty-month prison terms. *See United States v. Ruhbayan*, 427 F. Supp. 2d 640 (E.D. Va. 2006). The sentence resulted from Ruhbayan's convictions in the Eastern District of Virginia on four offenses arising from a perjury and obstruction of justice scheme. On appeal, Ruhbayan contends that the district court erred in four respects: (1) by enhancing his sentence under 18 U.S.C. § 1512(j), thereby increasing his prison exposure from ten years to life, in violation of the Sixth Amendment; (2) by applying *United States v. Booker* in contravention of the Ex Post Facto Clause of the Fifth Amendment; (3) by miscalculating his sentencing range under the Sentencing Guidelines (the "guidelines");[1] and (4) by failing to properly consider the 18 U.S.C. § 3553(a) sentencing factors. As explained below, we reject these contentions and affirm.

I.

Ruhbayan challenges the sentence imposed on him in a resentencing proceeding conducted in the Eastern District of Virginia in November 2005. His resentencing followed a complex series of convictions and appeals, which we summarize below.

---

[1]In his third appellate contention, Ruhbayan maintains that the sentencing court improperly determined his guidelines sentencing range in three respects: (1) enhancing his offense conduct based on evidence of drug quantity and nature for an offense underlying his perjury and obstruction of justice scheme; (2) upwardly departing to criminal history category VI; and (3) upwardly departing for circumstances not adequately considered by the guidelines.

A.

On April 8, 2000, Ruhbayan was arrested in Martinsville, Virginia. During this arrest, the authorities recovered crack cocaine, cocaine residue, and $240 in cash from Ruhbayan. On April 14, 2000, Ruhbayan was arrested while driving a van in Suffolk, Virginia, and the arresting officers recovered a loaded nine-millimeter pistol hidden between cushions in the back of his van. On August 25, 2000, Ruhbayan was indicted in the Eastern District of Virginia on multiple felony counts, including conspiracy to distribute cocaine base, in violation of 21 U.S.C. § 846 (the "drug conspiracy offense"), and using a firearm during a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1) (the "firearm offense"). *See* J.A. 38-43.[2] During a jury trial conducted in Norfolk, Virginia, in September 2000 (the "First Trial"), the prosecution presented evidence of Ruhbayan's involvement in drug and firearms activities. In response, Ruhbayan presented his testimony and that of his then-girlfriend, Yolanda Goodman. Ruhbayan admitted that he was a convicted felon, but denied that he was a drug dealer and that he had ever possessed firearms, including the pistol recovered from his van in April 2000. Goodman testified in support of Ruhbayan that she had never seen him with drugs or firearms. She admitted being a convicted felon, and asserted that she had hidden the pistol in Ruhbayan's van without his knowledge. The jury credited her testimony and convicted Ruhbayan on two lesser-included misdemeanor drug offenses, acquitting him of the drug conspiracy offense and the firearm offense. He was thereafter sentenced to two consecutive twelve-month terms in prison. Ruhbayan appealed one of his convictions, as well as his sentence, and we affirmed. *See United States v. Ruhbayan*, 15 F. App'x 116 (4th Cir. 2001) (unpublished).

B.

After the First Trial, Goodman was indicted by the grand jury in Norfolk for being a convicted felon in possession of the pistol hidden in Ruhbayan's van. Following her indictment, Goodman admitted that she had falsely testified in the First Trial about placing the firearm in

---

[2]Our citations to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties in this appeal.

Ruhbayan's van. She acknowledged that she had committed perjury at Ruhbayan's request and to mislead the jury. As a result, Goodman pleaded guilty to obstruction of justice and agreed to testify against Ruhbayan. She also provided the prosecution with more than fifty letters written to her by Ruhbayan while he was awaiting the First Trial. In those letters, Ruhbayan demanded that Goodman locate and secure a non-felon to testify falsely to possession of the pistol found in his van. When Goodman was unable to find someone to so testify, Ruhbayan convinced her to lie and testify that it was her pistol.

On February 12, 2002, Ruhbayan was charged by the grand jury in Norfolk with five offenses arising from his actions in connection with the First Trial, specifically: (1) conspiracy to commit perjury and obstruction of justice, in contravention of 18 U.S.C. § 371 (Count One); (2) corruptly influencing and attempting to influence the testimony of a witness (Goodman) in a criminal trial, in contravention of 18 U.S.C. § 1512 (Count Two); (3) perjury, in contravention of 18 U.S.C. § 1623 (Count Three); (4) subornation of perjury, in contravention of 18 U.S.C. § 1622 (Count Four); and obstruction of justice, in contravention of 18 U.S.C. § 1503 (Count Five).[3] Ruhbayan was tried on the 2002 indictment in October 2003 (the "Second Trial"). During the Second Trial, Goodman testified about Ruhbayan's efforts to secure her false testimony in the First Trial, and several police officers (and other witnesses) testified about Ruhbayan's involvement in the drug business. On October 24, 2003, the jury in the Second Trial found Ruhbayan guilty on all five counts. The district court thereafter denied his motions for judgment of acquittal and a new trial.

At a sentencing hearing conducted on February 4, 2004, the district court sentenced Ruhbayan to life in prison on Count Two and to three concurrent sixty-month sentences on Counts One, Three, and Four. The court vacated Ruhbayan's conviction on Count Five, concluding that it was multiplicitous with Count Two. Ruhbayan thereafter appealed to this Court, asserting multiple grounds for relief. In resolv-

---

[3]Ruhbayan initially sought to dismiss the 2002 indictment on the basis of collateral estoppel, contending that the verdict in the First Trial barred the charges contained in the indictment. The district court denied the motion to dismiss, and we affirmed. *See United States v. Ruhbayan*, 325 F.3d 197 (4th Cir. 2003).

ing his appeal, we affirmed his convictions but vacated his sentence, remanding for resentencing pursuant to *United States v. Booker*, 543 U.S. 220 (2005). *See United States v. Ruhbayan*, 406 F.3d 292 (4th Cir. 2005).

C.

As a result of our *Booker* remand, the resentencing hearing underlying this appeal was conducted on November 8, 2005. On that occasion, the district court reimposed its initial sentence — life in prison on Count Two and three concurrent sixty-month sentences on Counts One, Three, and Four. In its memorandum opinion in connection therewith, the court concluded that Ruhbayan's statutory maximum sentence on the Count Two offense — influencing or attempting to influence the testimony of a witness, in violation of 18 U.S.C. § 1512 — was life in prison. *See United States v. Ruhbayan*, 427 F. Supp. 2d 640, 653 (E.D. Va. 2006).[4]

In calculating the applicable guidelines range on the combined four counts of conviction, the court assigned Ruhbayan a base offense level of 30, relying on the recommendations of the Presentence Investigation Report (the "PSR"). The PSR determined that, because Ruhbayan had committed and suborned perjury in connection with the drug conspiracy and firearm offenses in the First Trial, he was subject to the enlarged (or, maximum) base offense level of 30 under the applicable guidelines. *See* U.S.S.G. §§ 2J1.3, 2X3.1.[5]

---

[4]Section 1512 of Title 18 provides that any person who influences or attempts to influence testimony in an official proceeding is subject to a maximum term of ten years in prison. Subsection (j) of § 1512 provides that if the attempt to influence testimony occurs in connection with a criminal trial, the maximum term is that which could have been imposed for *any offense* charged in such a trial. The district court identified the firearm offense in the 2000 indictment as the offense in the First Trial that subjected Ruhbayan to a life sentence under § 1512(j). *See Ruhbayan*, 427 F. Supp. 2d at 653 (citing *United States v. Harrison*, 272 F.3d 220, 226 (4th Cir. 2001)).

[5]Ruhbayan was sentenced under the 2002 version of the guidelines. Section 2J1.3 provides a base offense level of 14 for the offenses of perjury or suborning perjury, and cross references to section 2X3.1 (acces-

Beginning with the PSR's recommended base offense level of 30, the court imposed a two-level enhancement for Ruhbayan's role as "an organizer, leader, manager, or supervisor of one or more other participants" in suborning perjury. *See* U.S.S.G. § 3B1.1(c). The court departed from the PSR's recommendation of criminal history category III to category VI, finding that category III substantially underrepresented the seriousness of Ruhbayan's criminal record. *See id.* § 4A1.3. The court then determined that an additional departure from the guidelines range pursuant to section 5K2.0 was warranted because the guidelines did not adequately account for the aggravating circumstances of the underlying drug conspiracy offense, that is, that Ruhbayan was a principal in the conspiracy and that he had used a firearm in connection therewith. Ruhbayan's offense level on the drug conspiracy offense would have been 38, which when paired with criminal history category VI, subjected him to a guidelines range of 360 months to life. Finally, the court assessed and weighed the factors established in 18 U.S.C. § 3553(a) and determined that imposition of a life sentence was sufficient to comply therewith.

Ruhbayan has again appealed, challenging multiple aspects of his sentence. Specifically, Ruhbayan contends that the district court erred in four respects when it resentenced him: (1) by improperly enhancing his sentence under 18 U.S.C. § 1512(j), which increased his exposure

---

sory after the fact) if the conduct occurs in connection with a criminal offense. Section 2X3.1 provides that a defendant's base offense level as an accessory after the fact is six levels below the offense level for the underlying offense, up to a maximum level of 30. Applying section 2X3.1, the PSR identified the drug conspiracy offense as the offense underlying Ruhbayan's perjury and suborning perjury offenses, with the base offense level for the drug conspiracy offense being premised on the amount of cocaine base attributed to him. *See* U.S.S.G. § 2D1.1(c). Premised on the evidence concerning the crack cocaine and cash involved in the conspiracy, Ruhbayan was assigned a base offense level of 36. *See id.* § 2D1.1(c)(2). A two-level increase for possession of a dangerous weapon during the drug trafficking offense increased Ruhbayan's offense level to 38. Pursuant to section 2X3.1, six levels were subtracted from the offense level of 38, resulting in an offense level of 32. Because the maximum base offense level a defendant can receive under section 2X3.1 is 30, Ruhbayan was then assigned that base offense level.

from ten years to life, in violation of the Sixth Amendment; (2) by applying the remedial portion of *United States v. Booker* in contravention of the Ex Post Facto Clause of the Fifth Amendment; (3) by miscalculating his base offense level and criminal history category under the guidelines; and (4) by failing to properly consider the 18 U.S.C. § 3553(a) sentencing factors.

## II.

We review de novo Ruhbayan's first two contentions of error — that his sentence contravenes the Sixth Amendment and the Ex Post Facto Clause of the Fifth Amendment. *See United States v. Thompson*, 421 F.3d 278, 280-81 (4th Cir. 2005) (reviewing de novo contention that sentence was unconstitutionally imposed). On Ruhbayan's third contention — that the sentencing court erred in determining his base offense level and criminal history category — we review for clear error the findings of fact made by the court on its decision to upwardly depart, and we assess the reasonableness of its departure for abuse of discretion. *See United States v. Davis*, 380 F.3d 183, 187-88 (4th Cir. 2004). We review de novo the court's ultimate decision to depart. *See id.*

Finally, on Ruhbayan's fourth contention — that the court failed to properly consider the § 3553(a) factors — we review his sentence for reasonableness. *See United States v. Green*, 436 F.3d 449, 457 (4th Cir. 2006). As the Supreme Court has recently recognized, "a court of appeals may apply a presumption of reasonableness to a district court sentence that reflects a proper application of the Sentencing Guidelines." *Rita v. United States*, ___ S. Ct. ___, No. 06-5754, 2007 WL 1772146, at *6 (June 21, 2007). And in this Circuit, a sentence imposed within a properly calculated guidelines range is deemed presumptively reasonable. *See Green*, 436 F.3d at 457.

## III.

### A.

Ruhbayan's first contention in this appeal is that the district court erroneously applied the sentencing enhancement mandate of 18

U.S.C. § 1512(j), in violation of the Sixth Amendment, because the factual predicate for that provision was neither alleged in the indictment nor submitted to the jury for determination. Pursuant to § 1512(b)(1), any person who influences or attempts to influence testimony in an official proceeding is subject to a maximum term of ten years in prison. Subsection (j) of § 1512 provides that if the attempt to influence testimony occurs in connection with a criminal trial, the maximum term is that which could have been imposed for *any offense* charged in such trial.

In this appeal, Ruhbayan maintains that the indictment failed to allege anything to trigger the application of subsection (j) of § 1512, and that the sentencing court improperly relied on extra-indictment facts in imposing sentence, in contravention of *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (holding that Sixth Amendment mandates that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt"). As explained below, this contention is without merit.

First, because Count Two of the 2002 indictment alleged the elements of the § 1512 offense and fairly informed Ruhbayan of the charge, it was sufficient to enable him to plead double jeopardy in any subsequent prosecution. *See United States v. Williams*, 152 F.3d 294, 299 (4th Cir. 1998) ("To pass constitutional muster, an indictment must (1) indicate the elements of the offense and fairly inform the defendant of the exact charges and (2) enable the defendant to plead double jeopardy in subsequent prosecutions for the same offense."). Second, Count Two specified that Ruhbayan's conduct occurred in connection with the First Trial. Indeed, the jury in the Second Trial was instructed on Count Two as follows:

> Count 2 of the indictment charges that in or about May through August of 2000, . . . Ruhbayan[ ] did knowingly and corruptly persuade . . . Goodman[ ] to testify falsely in an official proceeding, *namely his pending criminal trial in the United States District Court for the Eastern District of Virginia at Norfolk, entitled United States v. Ruhbayan, Criminal Number 2:00cr86*, with intent to influence the testimony of that person in an official proceeding, namely his criminal

trial, in violation of Title 18 of United Sates Code, Section
1512(b)(1).

J.A. 591-92 (emphasis added).[6] Clearly, the issue of whether the con-
duct charged in Count Two occurred in connection with a criminal
trial was a fact that would increase the penalty for that offense beyond
the maximum Ruhbayan otherwise faced under § 1512(b). For that
reason, that factual issue was appropriately submitted to the jury. The
indictment and the instructions each identified the Count Two offense
as related to the First Trial, and the jury could not have returned a
guilty verdict thereon without so finding. Ruhbayan was thus subject
to a maximum of life imprisonment under § 1512(j), because an
offense charged in the First Trial involved use of a firearm in connec-
tion with a drug trafficking crime, in violation of 18 U.S.C.
§ 924(c)(1). *See United States v. Harrison*, 272 F.3d 220, 225-26 (4th
Cir. 2001) ("[Section 924(c)] no longer provides for a determinate
statutory sentence. . . . [I]t sets forth no determinate sentence or even
any upper limit on sentencing . . . . [T]he maximum penalty is life
imprisonment."). Because the trial court properly submitted to the
jury the factual issue of whether the Count Two offense occurred in
connection with the First Trial, no *Apprendi* error occurred. The sen-
tencing court thus properly determined that the statutory maximum
penalty on Count Two was life in prison.[7]

B.

In his second contention in this appeal, Ruhbayan maintains that
the sentencing court's application of the remedial provisions of

---

[6]The instructions advised the jury that the government was obliged,
with respect to Count Two, to prove two essential elements beyond a rea-
sonable doubt: (1) that Ruhbayan "corruptly persuaded or attempted to
persuade [Goodman] as a witness"; and (2) that he did so "intending to
influence the testimony of [Goodman] in an official proceeding." J.A.
592. The term "official proceeding" was explained to the jury as "a pro-
ceeding before a judge or court of the United States." *Id.* at 593.

[7]The prosecution maintains that Ruhbayan waived his *Apprendi* con-
tention by failing to contest, in his 2005 appeal, the applicability of a
possible life sentence on Count Two under 18 U.S.C. § 1512(j). Because
no *Apprendi* error occurred, we need not reach the waiver issue.

*United States v. Booker*, 543 U.S. 220 (2005), is precluded by the Ex Post Facto Clause of the Fifth Amendment. More specifically, he asserts that the maximum prison term to which he was exposed, as determined by the facts decided by the jury, was twenty-one months. At oral argument, however, Ruhbayan conceded that this claim is foreclosed by our recent decision in *United States v. Davenport*, 445 F.3d 366 (4th Cir. 2006), which was rendered after this appeal was initiated. In *Davenport*, we joined four of our sister circuits in holding that retroactive application of *Booker*'s remedial scheme does not contravene the Ex Post Facto Clause. *See* 445 F.3d at 369-70; *see also United States v. Austin*, 432 F.3d 598, 599-600 (5th Cir. 2005) (per curiam); *United States v. Vaughn*, 430 F.3d 518, 524-25 (2d Cir. 2005); *United States v. Perez-Ruiz*, 421 F.3d 11, 15 (1st Cir. 2005); *United States v. Dupas*, 419 F.3d 916, 919-21 (9th Cir. 2005); *United States v. Jamison*, 416 F.3d 538, 539 (7th Cir. 2005). Consistent with *Davenport*, we reject Ruhbayan's contention in this regard.

C.

Ruhbayan next maintains that the district court erred in calculating his guidelines sentencing range in three respects: (1) by concluding that the drug conspiracy offense underlying his perjury and suborning perjury offenses involved 905.36 grams of cocaine base; (2) by upwardly departing, pursuant to section 4A1.3, from criminal history category III to category VI; and (3) by upwardly departing, pursuant to section 5K2.0, on the premise that the guidelines failed to adequately take into account his underlying behavior. We assess these three points in turn.

1.

Ruhbayan maintains that the sentencing court erred in concluding that he was subject to the maximum base offense level of 30 under section 2X3.1 of the guidelines, premised on the PSR's conclusions on the amount (905.36 grams) and nature (cocaine base) of the drugs involved in the drug conspiracy offense underlying his perjury and suborning perjury offenses. *See supra* note 5 (explaining how base offense level of 30 was determined). In support of this contention, Ruhbayan asserts that the evidence was insufficient to establish the quantity of the drugs attributed to him, and also insufficient to prove

that the drugs were in fact crack cocaine (cocaine base), as opposed to some other form of cocaine.[8] As explained below, we are unable to identify any error concerning the drugs attributed to Ruhbayan by the sentencing court.

Put simply, the prosecution presented sufficient evidence to prove both the quantity and nature of the drugs attributed to Ruhbayan. First of all, the quantity and nature of drugs attributable to a defendant may be established by a preponderance of the evidence, and sentencing findings in that regard are only to be disturbed if they are clearly erroneous. *See United States v. Carter*, 300 F.3d 415, 425 (4th Cir. 2002); *United States v. Cook*, 76 F.3d 596, 604 (4th Cir. 1996). Second, a sentencing court has broad discretion concerning its determination of the nature and quantity of such drugs. *See Cook*, 76 F.3d at 604 (citing *United States v. Falesbork*, 5 F.3d 715, 722 (4th Cir. 1993)). Third, the evidence relied on by a sentencing court in assessing such drug issues need not be corroborated or precise. *See United States v. Love*, 134 F.3d 595, 607 (4th Cir. 1998); *United States v. Uwaeme*, 975 F.2d 1016, 1019 (4th Cir. 1992). Finally, a sentencing court is entitled to rely on the drug-related facts spelled out in the PSR, unless the defendant shows that they are unreliable. *See Love*, 134 F.3d at 606.

Measured under these standards, the supporting drug evidence in this case was entirely sufficient. Daniel Miller testified in both trials that he had sold Ruhbayan crack cocaine in amounts ranging from a quarter ounce to an ounce, approximately twice a week, from 1998 through September 1999. The PSR held Ruhbayan accountable for purchasing 481.95 grams from Miller, attributing to Ruhbayan the most conservative amount of crack cocaine (a quarter ounce) twice a week for thirty-four weeks. Terance Goodman testified during the Second Trial that, from August or September 1999 through December of that year, he sold Ruhbayan 28 grams of crack cocaine each Thursday or Friday, and between 7 and 14 grams each Monday or Tuesday. He also testified that Ruhbayan's purchases averaged approximately

---

[8]According to the guidelines, cocaine base "means 'crack.' 'Crack' is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form." U.S.S.G. § 2D1.1(c) cmt. n.D.

two ounces a week. The PSR held Ruhbayan accountable for purchasing 420 grams of crack cocaine from Terance Goodman, attributing to Ruhbayan the most conservative amount of crack cocaine (35 grams) per week for twelve weeks. The Martinsville police officer who arrested Ruhbayan in April 2000 testified that, during that arrest, he found crack cocaine and $240 in Ruhbayan's left pocket. A laboratory analysis determined that the substance so found was crack cocaine weighing 1.01 grams. The PSR held Ruhbayan accountable for possessing 3.41 grams of crack cocaine on that occasion, premised upon the 1.01 grams, plus an additional 2.4 grams based on the $240 in cash (calculated at $100 per gram) seized from his pocket. As a result, the quantity of crack cocaine attributed to Ruhbayan in the PSR totalled 905.36 grams.

As outlined above, Miller and Terance Goodman each testified that Ruhbayan was dealing in crack cocaine. The Martinsville officer testified that the substance found in Ruhbayan's pocket was rock-like, and identified it as crack cocaine. According to the evidence of Yolanda Goodman and Lanetta Riddick in the Second Trial, each had observed Ruhbayan selling crack cocaine. As a result, the court's findings regarding drug quantity and the nature thereof were supported by the evidence, they are not clearly erroneous, and Ruhbayan's contention on this point must fail.

2.

Ruhbayan next contends that the sentencing court erred in ruling that his criminal history was substantially underrepresented and upwardly departing pursuant to section 4A1.3 of the guidelines. In its memorandum opinion explaining this departure, the court observed that (1) Ruhbayan had engaged in nearly continuous criminal activity since becoming an adult, ceasing only during periods of incarceration; (2) he had not received criminal history points for his juvenile sentences; (3) he had not received criminal history points for the sentences imposed in his First Trial; (4) the present offenses were committed while the First Trial was pending and ongoing; and (5) he was "one of the worst criminals" ever to appear before it. *See United States v. Ruhbayan*, 427 F. Supp. 2d 640, 647 (E.D. Va. 2006). The sentencing court also recognized that this Court had already sanctioned an increase in Ruhbayan's criminal history category from III

to V, when we affirmed his sentence after the First Trial. *See id.* at 655 (citing *United States v. Ruhbayan*, 15 F. App'x 116, 118-19 (4th Cir. 2001)).[9] The sentencing court then identified two of its five stated grounds for departure that could not have contributed to Ruhbayan's earlier criminal history category of V, and that, in its view, warranted a further increase from category V to VI: (1) that Ruhbayan had not received criminal history points for the sentences imposed in his First Trial, and (2) that his present offenses were committed while the First Trial was pending. *See id.*

In challenging this departure, Ruhbayan maintains that the court erred in three respects: (1) in considering his juvenile sentences, for which he had received no criminal history points; (2) in apparently (though not expressly) taking into account that he had received only three criminal history points for a 1994 manslaughter conviction; and (3) in considering that his present offenses occurred while the First Trial was pending. We readily reject the first two aspects of this contention, in that the juvenile sentences and the manslaughter conviction could have attributed only to the assignment of criminal history category V, and we have already affirmed Ruhbayan's assignment to that category. *See Ruhbayan*, 15 F. App'x at 118-19. Moreover, we need not reach the third aspect of this contention because the sentencing court cited an additional factor which, standing alone, warrants its departure from criminal history category V to VI: that Ruhbayan had not received any criminal history points for the sentences imposed in his First Trial. As related earlier, Ruhbayan received two consecutive twelve-month sentences for his two convictions in the First Trial (for possession of cocaine base and conspiracy to possess cocaine base). *See Ruhbayan*, 15 F. App'x at 117. Significantly, he does not contest in this appeal the propriety of the sentencing court's use of these two uncounted sentences to increase his criminal history category to VI. Under these circumstances, the court's departure to category VI was permissible, and we reject Ruhbayan's contention to the contrary.

---

[9]In affirming Ruhbayan's sentence after the First Trial, we concluded that "the district court considered criminal history categories III, IV, and V, [and] provided a clear, well-reasoned explanation for its modification of Ruhbayan's criminal history category . . . to V, based upon reliable information contained in the presentence investigation report." *Ruhbayan*, 15 F. App'x at 118-19.

3.

Ruhbayan next maintains that the district court erred in determining that it was appropriate to upwardly depart pursuant to section 5K2.0 of the guidelines, a provision that permits a sentencing court to depart from the applicable guidelines range if "there exists an aggravating . . . circumstance . . . of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." U.S.S.G. § 5K2.0 (2002). In support of this contention, Ruhbayan maintains that the court failed to perform the analysis we mandated in *United States v. Rybicki*, 96 F.3d 754 (4th Cir. 1996). *Rybicki* spelled out a five-step analysis for use by a sentencing court on whether to depart from the guidelines. *See* 96 F.3d at 757-58. First, the court should determine the circumstances and consequences of the offense, an assessment we review for clear error only. *Id.* at 757. Next, the court must assess whether those circumstances and consequences appear to be sufficiently "atypical" to potentially take the case out of the heartland of the applicable guidelines. *Id.* And, as *Rybicki* explained on this point, "a district court's identification of factors for *potential* consideration is purely analytical and, therefore, is never subject to appellate review." *Id.* Third, the court should classify each factor that could potentially remove the case from the guidelines as either a forbidden, encouraged, discouraged, or unmentioned basis for departure. *Id.* Fourth, the court should assess whether the guidelines have already accounted for these factors, a determination that we review de novo. *Id.* at 758. Finally, the court must assess whether a departure is reasonable under the circumstances. *Id.* We review a departure decision for abuse of discretion, and we assess a sentencing court's related factual determinations for clear error. *Id.*

In applying these principles, the sentencing court determined that a departure under section 5K2.0 was warranted, because the guidelines failed to adequately account for the aggravating circumstances of Ruhbayan's underlying drug conspiracy offense, that is, he was a principal in the conspiracy and had used a firearm in connection therewith. Ruhbayan's offense level on the drug conspiracy offense would have been 38, which, paired with his criminal history category of VI, would have subjected him to a sentencing range of 360 months to life. Ruhbayan contends that, in finding the departure appropriate,

the court failed to engage in steps two and four of the *Rybicki* analysis. That is, according to Ruhbayan, the court failed to decide whether his circumstances were sufficiently atypical to take his case out of the heartland of the guidelines, and the court failed to assess whether those factors had already been accounted for.

Contrary to Ruhbayan's contention in this regard, the district court specifically identified two factors — Ruhbayan's use of a firearm and that he was a principal in the underlying drug conspiracy offense — that render his case atypical. *See Ruhbayan*, 427 F. Supp. 2d at 648 n.16; J.A. 958-59. Thus, the court sufficiently complied with step two of the *Rybicki* analysis and we are unable to disturb its determination that Ruhbayan's circumstances were atypical. *See Rybicki*, 96 F.3d at 757 ("Unlike the other steps in this analysis, a district court's identification of factors for *potential* consideration is purely analytical and, therefore, is never subject to appellate review.").

Our review of the sentencing court's assessment of step four of the *Rybicki* analysis — whether the factors identified by the sentencing court have otherwise been taken into account — likewise reveals no error. *See Rybicki*, 96 F.3d at 758. First, Ruhbayan's contention that the guidelines already accounted for his possession and use of a firearm in the underlying drug conspiracy offense is without merit. Section 5K2.0 provides, as an example of a permissible ground for departure, that

> the use of a weapon has been listed as a specific offense characteristic under many guidelines, but not under other guidelines. Therefore, if a weapon is a relevant factor to sentencing under one of these other guidelines, the court may depart for this reason.

In Ruhbayan's situation, his use of a firearm in the underlying drug conspiracy offense was not factored into his base offense level under section 2X3.1, because that provision capped his base offense level at 30, and it did not account even for possession of the firearm, which would have moved his base offense level to 32. Thus, the aggravating factor of firearm use was not adequately taken into consideration by the guidelines. Second, Ruhbayan's contention that the guidelines already accounted for his role as a principal in the underlying drug

conspiracy offense is also without merit. The base offense level of 30 did not account for Ruhbayan's role as a principal in the underlying drug conspiracy offense; rather, his base offense level was calculated, pursuant to section 2X3.1, at the *accessory* level of that offense. *See supra* note 5. The court's enhancement for Ruhbayan's role as a principal thus did not result in double-counting, and it was appropriate. As a result, we reject Ruhbayan's challenge to the court's decision to upwardly depart pursuant to section 5K2.0.

D.

In his final appellate contention, Ruhbayan maintains that the sentencing court failed to give adequate mitigation consideration to certain of the factors specified in 18 U.S.C. § 3553(a), while conversely assigning too much weight to other factors, resulting in an unreasonable sentence. On appeal, we review a sentence for reasonableness, which requires us to ask whether "the sentence was selected pursuant to a reasoned process in accordance with law, in which the court did not give excessive weight to any relevant factor, and which effected a fair and just result in light of the relevant facts and law." *United States v. Green*, 436 F.3d 449, 457 (4th Cir. 2006). And, as the Supreme Court has recently recognized, a sentence that falls within the properly calculated guidelines range may be deemed presumptively reasonable. *See Rita v. United States*, __ S. Ct. __, No. 06-5754, 2007 WL 1772146, at *6 (June 21, 2007) (holding that "a court of appeals may apply a presumption of reasonableness to a district court sentence that reflects a proper application of the Sentencing Guidelines"). As we have recognized, "[t]o establish the reasonableness of a sentence, . . . the record must reflect that the court adequately and properly considered the § 3553(a) sentencing factors." *United States v. Eura*, 440 F.3d 625, 632 (4th Cir. 2006).

Ruhbayan's sentence fell within the properly calculated guidelines range and, under our precedent, is entitled to a presumption of reasonableness. *See Green*, 436 F.3d at 457. The sentencing court carefully articulated its consideration of the § 3553(a) factors in its memorandum opinion, as well as during the resentencing hearing, and it adequately and properly considered those factors. By way of example, the court recognized that the nature and circumstances of Ruhbayan's offenses did not weigh in his favor, in that he had "organized and

directed a false testimony scheme" in order "to deceive the jury, flaunt the guarantees of due process, and undermine the judicial system." *Ruhbayan*, 427 F. Supp. 2d at 656. The court observed that Ruhbayan was able to complete his scheme by exploiting Yolanda Goodman's "feelings of love and loyalty," and thus subjected her to a perjury charge, if the scheme was discovered, or a firearms charge, if it was not. *Id.* The court acknowledged that Ruhbayan's childhood had been a difficult one, but observed that crimes of violence committed in his adolescence and adulthood (including burglary, use of a firearm in commission of a felony, and voluntary manslaughter) demonstrated his disrespect for the law and for others. *Id.* As a result, the court found that a sentence of significant duration was "needed to reflect the seriousness of his offenses, to promote respect for the law, to provide [Ruhbayan] just punishment for his offenses, to protect the public from future crimes by [him], and to deter [him] from committing future crimes." *Id.* at 657. In light of the foregoing, we are unable to conclude that Ruhbayan's sentence was unreasonable, and this final contention is also rejected.

## IV.

Pursuant to the foregoing, we affirm the sentence imposed by the district court.

*AFFIRMED*