# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 29, 2008

Charles R. Fulbruge III
Clerk

No. 07-40683

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

JUAN FRANCISCO SALAZAR

Defendant-Appellant

Appeal from the United States District Court
for the Eastern District of Texas

Before HIGGINBOTHAM, DAVIS, and BARKSDALE, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

Convicted, pursuant to 18 U.S.C. § 1512(b)(2)(A), for using intimidation and threats with the intent to cause a witness to withhold testimony from a pending criminal trial, Juan Francisco Salazar appeals his conviction and sentence regarding this witness-tampering offense. Primarily at issue is application of 18 U.S.C. § 1512(j) (increases sentence, where witness-tampering offense occurs in connection with a trial of a criminal case, up to the maximum term that could have been imposed in the trial of the case to which the offense was connected). AFFIRMED.

I.

Salazar was charged with violating 18 U.S.C. § 1512(b)(2)(A) by knowingly intimidating, threatening, and corruptly persuading the wife of Iran Rolon (Sarah Rolon) and her sister (Maria Vela) with the intent to cause and induce Iran Rolon to withhold testimony from a case in which Salazar's two brothers were defendants on drug charges. Salazar was found guilty by a jury and sentenced, inter alia, to 210 months' imprisonment.

II.

Salazar presents two issues. Regarding his conviction, he claims insufficient evidence was presented from which the jury could have found the Government established the elements of the witness-tampering offense beyond a reasonable doubt. Concerning his sentence, he claims the district court erred in applying both the Guideline § 2X3.1 cross-reference (providing the minimum and maximum base offense level applicable to a defendant who was an accessory after the fact) and the earlier-referenced 18 U.S.C. § 1512(j).

A.

To obtain a conviction against Salazar, the Government had to prove, beyond a reasonable doubt, that he: (1) knowingly used intimidation, threats, or corrupt persuasion against the above-described Maria Vela or Sarah Rolon; and (2) did so with the intent to cause, or induce, Iran Rolon to withhold testimony from an official proceeding. 18 U.S.C. § 1512(b)(2)(A). Salazar contends the evidence was insufficient to support his conviction because the Government did not prove beyond a reasonable doubt that he made any threats to Maria Vela.

Salazar moved for judgment of acquittal at the close of the Government's case; but, after presenting evidence, Salazar did not so move at the close of all the evidence. His having failed to renew his motion for judgment of acquittal, we review his sufficiency-of-the-evidence challenge only for a manifest

2

miscarriage of justice. E.g., United States v. McDowell, 498 F.3d 308, 312 (5th Cir. 2007); United States v. Avants, 367 F.3d 433, 449 (5th Cir. 2004).[*]

Under the manifest-miscarriage-of-justice standard, Salazar must show either that the record is "devoid of evidence of guilt" or that the evidence is "so tenuous that a conviction is shocking". Avants, 367 F.3d at 449. In determining whether Salazar's conviction resulted in a manifest miscarriage of justice, and as is done under the standard of review employed when a sufficiency challenge is properly preserved, the evidence must be considered "in the light most favorable to the government, giving the government the benefit of all reasonable inferences and credibility choices". McDowell, 498 F.3d at 312 (citations and internal quotation marks omitted).

The charge against Salazar arose in connection with a federal indictment in Oklahoma against his brothers, Elijah and Rocky Salazar, and against another defendant, Iran Rolon, for conspiracy to possess with intent to distribute, and distribution of, methamphetamine, marijuana, and cocaine powder. Iran Rolon pleaded guilty to a possession and manufacturing charge, and then became a prosecution witness against Elijah and Rocky Salazar.

During Salazar's trial, Maria Vela testified that Salazar came to her home in late June or early July 2006 and told her to deliver a message to her sister, Sarah Rolon, that he was going to rape and kill Sarah Rolon because her husband, Iran Rolon, was responsible for Salazar's two brothers being in jail.

---

[*] Neither party addressed the manifest-miscarriage-of-justice standard. Of course, this has no bearing on the standard of review to be applied, because "we, not the parties, determine the appropriate standard". United States v. Herrera, 313 F.3d 882, 885 n.* (5th Cir. 2002) (en banc) (emphasis in the original). Nevertheless, for obvious reasons, this far more-narrow standard of review should have been briefed by the parties. Instead, Salazar relied on a not-on-point opinion, United States v. Floyd, in which the motion for judgment of acquittal had been renewed, 343 F.3d 363, 370 (5th Cir. 2003); again, here, the motion was made only at the close of the Government's case. As noted, the Government failed to address this point, other than to provide the standard of review, not applicable here, for when the sufficiency issue is properly preserved.

Vela testified she told Sarah Rolon about Salazar's threat when Vela spoke with Sarah Rolon by telephone the following day.

Maria Vela further testified that Salazar and two friends returned to her home a week or two later, knocked on her door, and walked around her house when she did not answer. Later, when Salazar presented evidence, David Foster testified he and Salazar stopped at Vela's house on that occasion only because they needed gasoline for their vehicle and did not have money to purchase it at a service station.

At Salazar's trial, Sarah Rolon corroborated Maria Vela's testimony about the telephone conversation in which Vela conveyed Salazar's threat to Sarah Rolon. Sarah Rolon testified: Maria Vela also told her about Salazar's return visit to Vela's home; and, when her husband (Iran Rolon) telephoned her from jail, Sarah Rolon told him of the threat made by Salazar and his return visit to Vela's home. Sarah Rolon testified that the voices on the recordings made by jail personnel of those conversations were the voices of her and her husband. She also confirmed that the transcripts of the recordings accurately reflected what she and Iran Rolon said during the conversations.

Sarah Rolon also testified that, following her husband's advice, she telephoned Detective Green and told him about Salazar's threat and his return visit to her sister's (Maria Vela's) house. In his trial testimony, Detective Green confirmed: Sarah Rolon called him a day or so after the date she provided him for when Salazar made the threat; and the testimony of Sarah Rolon and Maria Vela during the trial was consistent with what they told him when he spoke with them after Salazar was said to have made the threat.

Iran Rolon corroborated Sarah Rolon's testimony regarding the telephone conversation in which she informed him of Salazar's threat, and further testified that, as a result of the threat, he considered not testifying against Salazar's brothers. Another witness, Thogmartin, testified that Salazar told him that Iran

4

Rolon "was snitching about his brothers", and that, if Salazar could not get to Iran Rolon directly, he would handle it "the street way". Conrad, a legal assistant to the prosecutor who interviewed Thogmartin, testified that she heard Thogmartin say Salazar meant he was going to go after Iran Rolon's family when Salazar said he would handle it "the street way".

On cross-examination, Maria Vela admitted: she used drugs; she had smoked marijuana with Thogmartin the day after Salazar came to her home; her boyfriend had twice knocked her unconscious; and she had been convicted of theft by check. She conceded she did not like Salazar.

A jury found Salazar guilty of the witness-tampering charge. Salazar maintains the evidence was insufficient to convict him because the Government's key witness, Maria Vela, had previously been convicted of theft by check and was an admitted drug user who had smoked marijuana before she spoke with the police about the claimed threats. Salazar contends that Vela's memory and mental ability were so impaired by drug use and a history of concussions (which resulted from beatings by her boyfriend) that she was unable to remember her address when she reported the threats to the police. Salazar also asserts that the testimony by his witness, Foster, contradicting Maria Vela's claim, proved that Salazar's return visit to Vela's home was nothing more than an effort to request gasoline for his vehicle.

Salazar does not mention the testimony by the other witnesses, such as Thogmartin and Conrad, both of whom corroborated Vela's testimony that Salazar expressed an intention to harm members of the Rolon family. Instead, Salazar focuses on the credibility of Vela and Foster. Of course, our review does not include weighing the evidence or assessing the credibility of witnesses. E.g., United States v. Lopez, 74 F.3d 575, 577 (5th Cir. 1996). It goes without saying that determining the weight and credibility of the evidence is solely within the province of the jury. E.g., United States v. Casilla, 20 F.3d 600, 602 (5th Cir.

1994). Accordingly, it was for the jury to determine, inter alia, whether Vela's testimony was reliable and whether Salazar and Foster returned to Vela's home only because they needed gasoline.

It is quite obvious that Salazar falls far short of satisfying the very narrow manifest-miscarriage-of-justice standard. Indeed, his sufficiency challenge would fail under the more lenient standard of review had he properly preserved this challenge.

B.

Salazar contests his sentence on three bases. He maintains the district court erred: by applying the cross-reference to Guideline § 2X3.1; through its interpretation and application of the penalty provisions in 18 U.S.C. § 1512(j); and by considering the evidence in the light of an incorrect burden of proof when determining whether to enhance his sentence in line with the above-referenced guidelines' cross-reference and the sentencing statute.

The district court's interpretation of the sentencing statutes is reviewed de novo. E.g., United States v. Gonzalez, 250 F.3d 923, 925 (5th Cir. 2001). And, although post-Booker, the Sentencing Guidelines are advisory only, and an ultimate sentence is reviewed for reasonableness under an abuse-of-discretion standard, the district court must still properly calculate the guideline-sentencing range for use in deciding on the sentence to impose. Gall v. United States, 128 S. Ct. 586, 596 (2007). In that respect, its application of the guidelines is reviewed de novo; its factual findings, only for clear error. E.g., United States v. Cisneros-Gutierrez, 517 F.3d 751, 764 (5th Cir. 2008); United States v. Villegas, 404 F.3d 355, 359 (5th Cir. 2005).

Noting that violation of 18 U.S.C. § 1512(b)(2)(A) is addressed by Guideline § 2J1.2 (Obstruction of Justice), the presentence investigation report (PSR) set Salazar's base offense level at 14, as that guideline provides. Because he threatened to rape the wife of a Government witness in retaliation for her

husband's testimony, the PSR recommended that Salazar receive, pursuant to Guideline § 2J1.2(b)(1)(B), an eight-level increase for obstructing justice by witness tampering.

The PSR recommended that Guideline § 2J1.2(c)(1) (Obstruction of Justice) required application of the cross-reference in Guideline § 2X3.1 because Salazar's offense involved obstructing the investigation or prosecution of a criminal offense. Section 2X3.1 describes what base offense level should be applied when sentencing a defendant for participation as an accessory after the fact, depending upon the nature of the underlying offense. (In relevant part, the base offense level shall be six levels lower than the offense level for the underlying offense, except that the base offense level shall not be less than 4 nor more than 30.)

The PSR further noted that, under §§ 2X3.1(a)(1) and (a)(3)(A), "the base offense level [of 14] is 6 levels lower than the offense level for the [below-described] underlying offense and not more than 30". The PSR next noted that, for the underlying drug offenses of distribution and possession with intent to distribute, Elijah Salazar (Salazar's brother) was held accountable for more than 1.5 kilograms of methamphetamine, which resulted in a total offense level of 38. Applying the maximum base offense level permitted by the cross-reference to § 2X3.1(a)(3)(A), the PSR explained that Salazar's resulting base offense level, therefore, had to be reduced from 38 to 30.

The PSR noted the maximum term of imprisonment was life, because of the applicability of 18 U.S.C. § 1512(j) (increases sentence, where offense occurs in connection with a trial of a criminal case, up to the maximum term that could have been imposed in the trial of the case to which the offense was connected). Salazar's recommended base offense level of 30, in combination with his category VI criminal history, resulted in a guidelines sentencing-range of 168-210 months.

In his objections to the PSR, Salazar contended, inter alia, that the cross-reference to § 2X3.1 should not have been applied because his alleged offense did not obstruct, or involve obstruction of, the investigation or prosecution of a criminal offense. Along that line, Salazar also objected to the sentence recommendation, in excess of the § 1512(b)(2)(A) ten-year statutory maximum, made pursuant to § 1512(j), because, at the time of his offense, his brothers' trial had not commenced, it was not scheduled reasonably close to the date of Salazar's offense, and it was merely prospective in nature and remote because his brothers were engaged in plea negotiations when Salazar allegedly tampered with a witness.

During the sentencing hearing, Salazar maintained, inter alia, that the cross-reference to § 2X3.1 should not have been applied because he was innocent. The district court overruled all of his objections. Salazar was sentenced, inter alia, to 210 months' imprisonment.

1.

Salazar contends the district court erred in applying the cross-reference to § 2X3.1 in order to determine his base offense level. During the sentencing hearing, however, when the district court asked Salazar's counsel if he was making an argument "about whether or not 2J1.2 even applies or 2X3.1 even applies", counsel replied: "No, Your Honor. We're seeking to preserve the issue that in fact he is innocent and the conduct didn't occur and therefore it wasn't an obstruction of justice." (Emphasis added.)

a.

As a result, except for the above-quoted innocence-assertion for why the cross-reference could not apply, Salazar waived an issue concerning applying the cross-reference to § 2X3.1. See United States v. Arviso-Mata, 442 F.3d 382, 384 (5th Cir. 2006) ("Forfeiture is the failure to make the timely assertion of a right; waiver is the intentional relinquishment of a known right. Forfeited errors are

reviewed under the plain error standard; waived errors are entirely unreviewable." (footnotes omitted)).

b.

Salazar attempts to circumvent the waiver by asserting, consistent with his above-quoted innocence-objection at the sentencing hearing, that the application of the cross-reference was erroneous because the evidence was insufficient to support a finding that he made any threats which obstructed the investigation or prosecution of a criminal offense. This contention, however, is merely derivative of his failed sufficiency of the evidence claim and is, therefore, also equally without merit.

2.

As noted, when Salazar was sentenced, ten years was the statutory maximum for a violation of § 1512(b)(2)(A). In that regard, Salazar claims the district court erred by applying the penalty provisions of § 1512(j) and sentencing him to 210 months' imprisonment, which he asserts was impermissibly above the above-referenced ten-year maximum. Section 1512(j), however, provides for a higher sentence under the following circumstances:

> If the offense under this section occurs in connection with a trial of a criminal case, the maximum term of imprisonment which may be imposed for the offense shall be the higher of that otherwise provided by law or the maximum term that could have been imposed for any offense charged in such case.

18 U.S.C. § 1512(j) (emphasis added).

a.

First, Salazar focuses on his narrow interpretation of the § 1512(j) phrase "in connection with a trial of a criminal case". Along that line, he maintains this means the trial in the related case must be ongoing or scheduled reasonably close in time to when witness tampering occurred.

Salazar does not contest that: his two brothers were convicted in the Oklahoma case of conspiring to distribute narcotics, in violation of 21 U.S.C. § 846; and, the maximum punishment for their offense was life in prison. Instead, as he did in district court, Salazar emphasizes that, for the period of time he is charged with tampering with a witness, his brothers' trial had not begun and was not even scheduled to begin reasonably close to the charged tampering date. During the sentencing hearing, however, the district court rejected this assertion for the following reason:

> The court finds that this threat was made in connection with a trial. The two Salazar brothers had pled not guilty, the case was pending in the Eastern District of Oklahoma. It would have been tried had they not pled guilty, but they had not changed their plea when the threat was made.

Salazar's interpretation of the phrase "in connection with a trial of a criminal case" from § 1512(j), quoted supra, is quite narrow, to say the least. Moreover, he cites little in support of this interpretation, other than the definition in Black's Law Dictionary (7th ed. 1999) for the word "trial": "[a] formal judicial examination of evidence and determination of legal claims in an adversary proceeding".

As the Government points out, the "in connection with" language is broad. Obviously, had Congress wanted to limit the scope of the § 1512(j) enhancement in the manner urged by Salazar, it could have used another term, such as "close to or during", instead of "in connection with", a criminal trial. This is supported by analogy to 18 U.S.C. § 924(c)(1), which enhances the sentence for a defendant who uses a firearm "during and in relation to" violent or drug-trafficking crimes. 18 U.S.C. § 924(c)(1)(A) (emphasis added). Furthermore, in this regard, the Supreme Court has explained that "[t]he phrase 'in relation to' is expansive". Smith v. United States, 508 U.S. 223, 237 (1993) (emphasis added).

The phrase "in connection with" is similarly expansive, especially in the light of the striking similarity between the phrases "in relation to" and "in connection with". (A "connection" is "[t]he condition of being related to something else by a bond of interdependence". OXFORD ENGLISH DICTIONARY ONLINE (2008) (emphasis added).)

b.

Salazar also contends the rule of lenity counsels against adopting an expansive interpretation of "in connection with" because it is ambiguous and does not give fair warning of all that is encompassed by the criminal statute in question. However, "[t]o invoke the rule [of lenity], we must conclude that there is a grievous ambiguity or uncertainty in the statute". Muscarello v. United States, 524 U.S. 125, 138-39 (1998) (citations and internal quotation marks omitted). Neither condition is presented by the § 1512(j)'s "in connection with" language. Therefore, the rule of lenity does not apply.

3.

Salazar's final sentencing contention is that the district court erred by using a preponderance-of-the-evidence burden of proof, rather than proof beyond a reasonable doubt, when it enhanced his sentence by use of the cross-reference and sentenced him pursuant to § 1512(j). Emphasizing that his sentence was far greater than the ten-year statutory maximum for witness tampering under § 1512(b)(2)(A), Salazar asserts that the district court "had to make additional findings beyond the parameters of the indictment and the jury's findings in order to use the increased base offense level". To support his claim, Salazar relies on the Supreme Court's decision in Apprendi v. New Jersey, and similar cases, holding that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt". Apprendi, 530 U.S. 466, 490 (2000).

Salazar concedes he did not raise this issue in district court but, nonetheless, urges de novo review because the issue concerns the constitutionality of a sentence. Notwithstanding the nature of the claim, our review is only for plain error. United States v. Mares, 402 F.3d 511, 520 (5th Cir. 2005); e.g., United States v. Gonzales, 484 F.3d 712, 714 (5th Cir.), cert. denied, 127 S. Ct. 3031 (2007).

For such review, we first determine whether there is "(1) error, (2) that is plain, and (3) that affects substantial rights". Mares, 402 F.3d at 520. Under this narrow standard of review, an error is not "plain" unless it is "clear" or "obvious". United States v. Olano, 507 U.S. 725, 734 (1993). Even if plain error is found to exist, we retain discretion whether to correct it; generally, we will do so only if "the error seriously affects the fairness, integrity, or public reputation of judicial proceedings". Mares, 402 F.3d at 520.

Our having held § 1512(j) was properly applied by the district court in calculating Salazar's sentence, the maximum statutory penalty Salazar faced was life imprisonment. Accordingly, his 210-month sentence did not exceed the prescribed statutory maximum and Apprendi is not implicated.

It is, perhaps, worth noting that, even assuming, arguendo, Apprendi is implicated, the requirement that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt" has been satisfied. Apprendi, 530 U.S. at 490. The fact that needed to be submitted to the jury and proved beyond a reasonable doubt to apply § 1512(j) to Salazar, under the strictures of Apprendi, was that his offense occurred in connection with a trial of a criminal case.

The indictment charged Salazar with "the intent to cause and induce Iran Rolon to withhold testimony from the case of United States v. Salazar, et al., 6:CR15JHP", and the jury was charged similarly that the Government had to prove Salazar "acted knowingly and with intent to cause or induce Iran Louis

12

Rolon, Jr., to withhold testimony in the trial of United States v. Salazar, cause 6:CR15JHP, an official proceeding". Because the jury found Salazar guilty, it necessarily—or, at the very least, by implication—concluded that Salazar's threats were made in connection with the trial of a criminal case. See United States v. Ruhbayan, 527 F.3d 107, 115 (4th Cir. 2007) ("The indictment and the instructions each identified the [defendant's] offense as related to [a trial of a criminal case], and the jury could not have returned a guilty verdict thereon without so finding."), vacated for reconsideration in light of Kimbrough v. United States, 128 S. Ct. 558 (2007), by Ruhbayan, 128 S. Ct. 1132 (2008).

Accordingly, for purposes of our plain-error review, there was no error, plain or otherwise, in the district court's application of § 1512(j) for Salazar's sentence.

III.

For the foregoing reasons, the judgment is AFFIRMED.