# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 12, 2012

No. 11-20505
Summary Calendar

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

NEAL UY LIM,

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:10-CR-413-1

Before REAVLEY, JOLLY, and DAVIS, Circuit Judges.

PER CURIAM:[*]

Neal Uy Lim was convicted, following a jury trial, of one count of conspiracy to commit mail fraud, two counts of aiding and abetting mail fraud, and four counts of aiding and abetting in the possession of a counterfeit postage meter. Lim was sentenced to a total of 168 months of imprisonment, three years of supervised release, and ordered to pay $16 million dollars in restitution to the United States Postal Service (USPS). On appeal, Lim contends that there was insufficient evidence to sustain his convictions.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

As he acknowledges, Lim moved for a directed verdict based on insufficient evidence at the close of the Government's case but did not renew his motion at the close of all the evidence. Therefore, the sufficiency of the evidence is reviewed for a manifest miscarriage of justice. *See United States v. Salazar*, 542 F.3d 139, 142 (5th Cir. 2008). This court will reverse only if "the record is devoid of evidence of guilt or . . . the evidence is so tenuous that a conviction is shocking." *Id.* (internal quotation marks and citation omitted).

There was ample testimony at trial to establish Lim's knowledge and participation in the conspiracy, as well as his intent to defraud. David Herrera's testimony established that Lim and Russell Marshall were using the tampered postage meters prior to Herrera being hired to work at Mail Processing Center (MPC). When Russell could no longer work, Lim recruited Herrera to take over metering the mail with the tampered postage meters. Ricardo Garciduenas was thereafter recruited to take over Russell's job of altering the postage meters. Robert Mungai's testimony corroborated Garciduenas's testimony that Lim would instruct them to use the tampered meters when there was insufficient postage to meter the mail. Herrera, Mungai, and Garciduenas all testified that Lim knew about the use of the tampered meters, instructed them to use the tampered meters at MPC, and also encouraged them to lie after the Government became aware of the fraudulent scheme. Furthermore, Mungai testified that he personally observed Lim using a tampered postage meter during "crunch time." Lastly, Lim's own cousin, Steven Ong, testified that he left MPC because of Lim's fraudulent activity, which ended up costing the USPS millions of dollars in lost revenue. Bank records seized indicated that Lim was the person in control of MPC and Gulf Coast Presort's (GCP) finances.

"[A] conviction may be based solely on the uncorroborated testimony of an accomplice if the testimony is not incredible or otherwise insubstantial on its face." *United States v. Silva*, 748 F.2d 262, 266 (5th Cir. 1984). There is nothing inherently incredible or insubstantial about the testimony of the above witnesses

linking Lim to the conspiracy and proving that he had the intent to defraud. *See id.* To the extent that Lim challenges the sufficiency of the evidence by attacking the Government's witnesses' credibility, his argument is without merit. *See United States v. Polk*, 56 F.3d 613, 620 (5th Cir. 1995). Because there was sufficient evidence to prove that Lim had knowledge of the counterfeit meters, his argument that there was no evidence proving he constructively possessed the illegal meters is unavailing. *See United States Hinojosa*, 349 F.3d 200, 203-04 (5th Cir. 2003). When viewed in the light most favorable to the jury's verdict, the evidence is sufficient to uphold Lim's convictions. *See Salazar,* 542 F.3d at 142-43.

Lim contends that the he was denied a fair trial due to three improper comments made by the prosecutor during closing argument. As he acknowledges, he failed to object to the comments at trial and review is for plain error. *See Puckett v. United States*, 556 U.S. 129, 135 (2009). Lim contends that the prosecutor improperly vouched for the credibility of its witnesses by the following comment:

> Mr. Kuniansky spent sometime trying to point out discrepancies once again. Even if there are some discrepancies, it's not necessarily what they said outside of court. It's what they said in court under oath. And certainly these people aren't going to come in and risk lying in front of the judge that's going to be sentencing them.

The challenged remark does not constitute improper bolstering because as the Government correctly argues, the comment was made in rebuttal to defense counsel's assertion that Herrera, Garciduenas, and Mungai were lying when they testified. *See United States v. Dorr*, 636 F.2d 117, 120 (5th Cir. 1981). Nevertheless, even if the prosecutor's remark was improper, Lim has failed to demonstrate that the remark caused prejudice. The district court instructed the jury that they were "the sole judges of the credibility of all witnesses and the weight and effect of all evidence." Such curative instructions have been found

to mitigate the effects of improper comments on the jury. *United States v. Millsaps*, 157 F.3d 989, 993 (5th Cir. 1998); *see also United States v. Tomblin*, 46 F.3d 1369, 1390 (5th Cir. 1995).

Lim contends that the prosecutor misstated evidence during closing argument by stating that GCP laid off workers. Lim cites to the following statement made by the prosecutor:

> Ladies and gentleman, the harmed caused to the postal service in this case resulted in millions of dollars in revenue loss. And many people lost their jobs at GCP as a result of this and individuals that participated, however, the individuals that participated did not. They were allowed to remain on administrative leave for a while.

A prosecutor may discuss during closing arguments "properly admitted evidence and any reasonable inferences or conclusions that can be drawn" from the evidence presented at trial. *United States v. Mendoza*, 522 F.3d 482, 491 (5th Cir. 2008). As the Government correctly argues, the comment was not a misstatement of the evidence, but rather a summary of the evidence adduced at trial. Garciduenas testified that after the search warrants were executed, Lim's "business stopped . . . [i]t went under." However, after the business closed, Garciduenas testified that he remained on the payroll for a couple of weeks. When asked if all the employees remained on the payroll after the business closed, Garciduenas responded "[o]nly certain employees," the ones that knew about the bad meters. Herrera also testified that 80 employees at GCP lost their jobs because the bank foreclosed on Lim's business following the execution of the search warrant. Accordingly, Lim has failed to show any error in regard to the prosecutor's comment. *See Mendoza*, 522 F.3d at 491; *Puckett*, 556 U.S. at 135.

Lim contends that the following comment by the prosecutor constituted an "egregious attack[] on [his] counsel's ethics and integrity."

> But a lot to do has been made of these agreements which Mr. Kuniansky calls sweetheart deals. But quite frankly none of it is as [sic] surprise to Mr. Kuniansky or his client because both of them

4

were in court for the pleas.  So it's not a big secret.  It's just a smoke screen.

Lim does not explain how the comment by the prosecutor amounted to a disparagement of defense counsel nor how he was prejudiced by the comment. Nevertheless, the comment does not appear to be an attack on defense counsel but instead, as the Government urges, is directed at defense counsel's argument and appears to request the jury to focus on the relevant fact issues at trial.  *See United States v. Bernard*, 299 F.3d 467, 487-88 (5th Cir. 2002);  *United States v. Martino*, 648 F.2d 367, 388 n. 10 (5th Cir. 1981).  Moreover, in its instructions, the district court admonished the jurors that "any statements, objections, or arguments made by the lawyers are not in evidence."  The jury is presumed to have heeded the court's instruction.  *See Tomblin*, 46 F.3d at 1390.  Lim has failed to show plain error with regard to the prosecutor's comment.  *See Puckett*, 556 U.S. at 135.

Lim also contends that the district court clearly erred in applying an enhancement to his sentence for his role as a leader or organizer pursuant to U.S.S.G. § 3B1.1.  He contends that the offense did not involve "'five or more participants'" because "[t]his court has long held that corporations that are essentially the alter ego of the defendant do not count as separate participants." He also argues that his conduct was not "'otherwise extensive'" given his status as "an absentee manager."

Contrary to Lim's argument, the Government did prove that the criminal activity involved at least five participants:  Lim, Marshall, Herrera, Garciduenas, and Mungai.  *See United States v. Boutte*, 13 F.3d 855, 860 (5th Cir. 1994);  *United States v. Wilder*, 15 F.3d 1292, 1299 (5th Cir. 1994).  Further, despite Lim's physical absence from the company, he was the one who made the decisions regarding when to use the altered postage meters to meter the mail. Lim was also the one who controlled the finances and profited the most from the fraudulent scheme.  The district court's finding that Lim was a leader or

organizer of the criminal offense "is plausible in light of the record as a whole." *See United States v. Caldwell*, 448 F.3d 287, 290 (5th Cir. 2006).   Accordingly, the district court did not err in applying the enhancement.

AFFIRMED.